This is a suit by the former employee of a bakery to recover vacation pay pursuant to the provisions of a labor contract between the defendant and Bakery and Confectionery Workers' Local Union No. 35. Plaintiff alleges that, from the year 1938 until June 3, 1944, he was employed by defendant as a bread baker shift foreman on a 42 hour week basis and at a wage of $1.20 per hour; that, by virtue of a contract dated May 1, 1944, between defendant and Bakery and Confectionery Workers' Union No. 35, of which he is a member, it was agreed that each employee, who had been continuously in defendant's service for a period of five years or more and shall have worked a total of 2000 straight time hours in the year preceding, would be entitled to receive two weeks vacation with straight time pay; that, on June 3, 1944, he was discharged from his position by the defendant without cause and that, *Page 399 
therefore, defendant should be compelled to pay him the equivalent of the vacation pay (amounting to $100.80) of which he was unjustly deprived by reason of its unwarranted action.
The defendant admits plaintiff's employment, his rate of pay and his discharge on June 3, 1944, but it resists any liability to him on two grounds: (1) That his employment was not continuous, as he voluntarily quit his job on March 17th 1944 and was not reemployed until March 24th 1944; and (2) that plaintiff was discharged for just and sufficient cause thereby forfeiting any right which he might otherwise have had to a vacation with pay.
After a trial in the lower court on the foregoing issues, there was judgment in favor of plaintiff as prayed for. Defendant has appealed.
The questions presented for review involve the legal interpretation to be given to the contract sued upon as well as disputed questions of fact. The record, however, reveals the following uncontroverted facts.
Plaintiff had been employed at defendant's bakery for a period of over twenty years. On March 17, 1944, while engaged in his duties as a shift foreman, he quit his job as the result of friction existing between Alois Binder, the general manager of the bakery, and himself. He remained away from his work for a period of one week, when he was rehired by defendant as a consequence of the latter's effort to induce him to return. On June 3, 1944, plaintiff went to the bakery and informed Mr. George Binder, one of the officials, that he was leaving that night for Kansas City, Missouri and that he wished George Binder to tell Alois Binder, the general manager, to take his place. When Alois Binder received this message, he telephoned Mr. A.H. Buckley, President and Business Agent of plaintiff's local union, that he wanted to see plaintiff and that, if plaintiff did not come to the bakery to see him, he could consider that he was discharged. Plaintiff did not call to see Alois Binder in accordance with the latter's request and, upon his return from Kansas City, was paid only for the hours which he had worked. He demanded payment of an additional two weeks time, as vacation pay, but his demand was refused by defendant.
Section 13 of the contract between defendant and the Bakers Union, upon which plaintiff relies, reads as follows:
"Each employee who has been continuously in the service of the employer for one year or more shall receive one week's vacation with 42 hours straight time pay, and each employee who has been continuously in the service of the employer for five years or more shall receive two weeks' vacation with 84 hours straight time pay, provided he shall have worked a total of 2000 straight time hours in the year preceding. Vacations shall be given between May 1st and September 30th of each year, the specific dates to be designated by the employer. Vacation pay shall be given on the regular pay day preceding the employee's vacation. The employer shall have the privilege of granting pay in lieu of vacation time."
The first contention of the defendant is that, since it is shown that plaintiff quit his job on March 17, 1944, and did not return until March 24, 1944, the judge of the lower court committed error in permitting recovery. Plaintiff, on the other hand, maintains that the evidence shows that, after he left his job on March 17, defendant contacted Mr. Buckley, Business Manager of the Union, and requested Mr. Buckley to induce him to return to work; that, at the time this request was made, the contract which subsequently became effective on May 1st was in the process of negotiation and that he consented to return to work only in case he would receive all of the benefits accorded by the contract and with the distinct understanding that he would receive a vacation with full pay, despite the break in his continuity of service.
Mr. Buckley, testifying for plaintiff, stated that plaintiff insisted upon the preservation of his right to vacation pay as a condition to his return to work and that the Binders agreed that, if he would return, the "status quo" of his employment would be maintained.
Joseph H. Binder and Alois Binder, while admitting that they were anxious to have plaintiff return to his job and that they requested Mr. Buckley to intercede for them, state that nothing whatever was mentioned regarding plaintiff's right to vacation pay and that they did not make any agreement whatever respecting it. *Page 400 
The judge of the lower court, in resolving this question of fact in favor of plaintiff, was evidently of the belief that the positive testimony of Mr. Buckley preponderated over the denials of the Binders and, while we entertain some doubt in the premises (as plaintiff himself says that he had no discussion whatever with the Binders concerning the question of the preservation of his vacation rights), we cannot fairly say that his conclusion was manifestly incorrect. On the other hand, when we consider defendant's second contention that it had just and valid grounds for discharging plaintiff on June 3rd 1944, we find that the evidence amply sustains its position.
Plaintiff testified that for some weeks prior to his departure for Kansas City, he had informed Alois and George Binder of his intention to make the trip as he was anxious to attend the wedding of his niece which was contemplated sometime during the month of June; that the date of the wedding had been tentatively arranged for June 10th; that, during the early morning hours of June 3rd after he had returned home from work, he received a wire notifying him that the date of the wedding had been advanced to June 5th; that, at about ten o'clock on the morning of June 3rd, he went to the bakery where he saw George Binder; that he inquired of George Binder as to the whereabouts of Alois Binder; that George Binder informed him that Alois had just gone to sleep and asked if he could deliver to Alois a message for him; that he (plaintiff) replied that he wanted to get two weeks off to visit his sister-in-law and that George Binder said "Don't worry, go ahead and I'll take care of it".
George Binder denies the substance of plaintiff's testimony. He says that, on the morning of June 3rd, he was in the office of the bakery; that plaintiff suddenly opened the door and said to him "tell Alois I'm going to Kansas City, tell him to take my place" and that, before he had a chance to reply, plaintiff slammed the door and went off. The statement of George Binder is corroborated by Miss Louise Langlois, who is employed in the office of the bakery as a secretary.
In support of his testimony, plaintiff produced Joseph Carrone, a fellow employee, who stated that he was present on the morning of June 3rd when plaintiff came into the bakery and told George Binder that he wanted to see Alois Binder. His account of the conversation is as follows:
"A. Mr. Bondio walked over to George Binder — he wanted to see Mr. Alois Binder and George Binder told him that Alois was sleeping and he asked him what he wanted and he said, 'I want to see Mr. Alois, I want him to work in my place for two weeks because I am going to Kansas City.' He said, 'I'll tell Alois when he gets up this evening' and that's all I know."
Thus, it will be seen from the foregoing that plaintiff's own witness, Carrone, does not corroborate his statement that George Binder gave him permission to remain away from work. It is further shown that Alois Binder, upon receiving plaintiff's message from George Binder, telephoned Mr. Buckley at the Union's headquarters; that he informed Mr. Buckley that plaintiff had left a message that he was going to Kansas City and requested that he, Buckley, tell plaintiff that, if he did not come down to the bakery and see him (Binder), that he (plaintiff) could consider himself out of a job. Mr. Buckley testified that Alois Binder phoned him about four or five o'clock in the afternoon of June 3rd, at a time when the Union was having a meeting; that, following his conversation with Binder, he contacted plaintiff and delivered the message and that plaintiff replied "alright."
[1] In view of this evidence, we encounter considerable difficulty in concluding that the defendant was without just cause in discharging plaintiff. Plaintiff was foreman at the bakery and he owed to his employer the obligation of working regularly. He had no right to take temporary leave without the sanction of the defendant. If the purpose of plaintiff's trip to Kansas City had been due to sudden emergency or catastrophe, it might be argued that he was justified in his action but to leave his employment without permission for the purpose of attending the wedding of a niece can hardly be considered as such. And the evidence overwhelmingly shows that plaintiff did not obtain defendant's permission to make the trip, despite plaintiff's testimony to the contrary.
Since we find that defendant's action was based upon just and valid grounds, the question arises as to whether plaintiff had a *Page 401 
vested right to vacation pay under the Union contract, in view of the fact that he had worked continuously for 2000 hours prior to the time of his discharge. It was suggested during the argument of the case that Section 13 of the contract might be construed so as to accord to an employee, who had been continuously in the service of the defendant for five years or more, an absolute right to receive two weeks vacation pay irrespective of whether his employment was terminated for cause or not. In other words, if an employee voluntarily quits his job on or after May 1st, when vacation periods begin, is he, under Section 13 of the contract, entitled to receive pay equivalent to the pay which he would have received while on vacation had he continued in his employment?
[2] We are of the opinion that this question must be answered in the negative. The stipulation in the contract for the allowance of a vacation to employees is merely a recognition by management and labor that a short interval of complete rest and relaxation from daily routine with the benefit of full pay is essential to the mental and physical wellbeing of the workman. Such vacations or rest periods not only redound to the good of the daily worker but also to industry, in that the employee returns to his job refreshed, healthier and with new vigor and zeal. Vacation, therefore, contemplates a continuance of employment. The parties to the agreement, in contracting for the allowance of vacations, did not intend that the stipulation should be considered as providing a cash bonus in lieu of vacation pay for those employees who might see fit to discontinue their employment prior to the time the employer fixed the dates upon which the vacations would be given. This is made evident by the provision in Section 13 of the contract which reserves to the defendant the right to designate the dates, between May 1st and September 30th of each year, during which vacations shall be given. Hence, plaintiff could not and does not contend that, since he was entitled to a vacation, he had the right to select the date thereof.
On the contrary, his counsel maintains that: "Appellee merely left the city on that date (June 3rd) in order to attend the wedding of his niece and visit with his relatives; he expected no pay for the time he was off on this trip, but did expect to return to his position with appellant and receive his vacation some time later in the year — before September 30th — in accordance with the terms of the contract. His discharge by appellant made it impossible for him to enjoy that privilege, which he had already earned."
[3] The error in this postulation is apparent. Plaintiff did not have the right to leave his job for two weeks without incurring the penalty of forfeiting his vacation rights — for the contract, in stipulating for the allowance of vacations to those who have been continuously in the service of the employer for five years or more, contains the proviso that the employee shall have worked a total of 2000 straight time hours in the year preceding — that is, for the year preceding the date fixed by the employer for the commencement of the vacation. If there is a break in the continuity of this working time there is no right to a vacation. Therefore, if plaintiff had returned to his employment after his visit to Kansas City he would not have been entitled to a vacation since he would not have worked 2000 straight time hours in the year preceding the time his vacation would otherwise begin.
[4, 5] In interpreting the contract, it is, of course, of primary importance to discover whether its provisions are clearly set forth and that they express the true intention of the parties. And, even if the words used are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences. See Article 1945 of the Civil Code. Guided by the codal rule, it at once becomes obvious that any interpretation which would permit either the defendant or the labor union to use the provision concerning vacations as a weapon for the purpose of obtaining undue advantage in their respective favor is to be avoided. Thus, if this were a case where the employer discharged an employee without just cause at a time when his right to a vacation had accrued, we would unhesitatingly refuse to give sanction to the employer's attempt (by use of the summary power of discharge) to defeat such employee of his right to receive a vacation with pay or its equivalent. By the same token, we cannot permit recovery to an employee, who has been discharged for good cause — in that he has arbitrarily refused to respect the authority of his employer by laying off his job without permission, on the theory that he had a vested right to vacation pay. *Page 402 
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at his cost.
Reversed.
WESTERFIELD, J., absent, takes no part.