SKIBB, Appellant, vs. J. I. CASE COMPANY, Respondent.

*September 14—October 11, 1949.*

For the appellant there was a brief by *Max Raskin,* and oral argument by *William F. Quick,* both of Milwaukee.

For the respondent there was a brief by *Robertson & Johnson* of Milwaukee, and oral argument by *Howard R. Johnson.*

ROSENBERRY, C. J.   It is conceded by the parties hereto that the employees of the defendant company were entitled to a paid vacation in 1945 if the vacation was taken during the time set by the company.

On February 18, 1943, a contract was entered into between the defendant company and Local 180, UAW, CIO, which provided:

"Article V—Section 3.   Vacation assigments shall be made by the company in order to insure the orderly and

efficient continuation of production, but the company agrees to give, whenever possible, the desired vacation time indicated by the employee.

"Section 4. An employee must actually take his vacation in order to receive his vacation pay and all vacation assignments shall be made within the period of June 1 to September 15 in any year. Vacations are noncumulative from year to year."

This contract expired by its terms on April 28, 1944. There was no agreement between the defendant and the union relating to vacations until March 10, 1947. In May of 1945, there was pending before the national war labor board a petition by the union in regard to a contract between the company and the union, which included the question of securing a paid vacation for the year 1945. On June 11, 1945, the sixth regional war labor board handed down an interim report which was adopted in a directive order issued by the national war labor board on July 12, 1945. The interim report made no provision regarding the time for the taking of vacations. The union voted on June 12, 1945, that the vacation period should begin on July 15th for those taking one week and for those taking two weeks July 15th and July 22d. On June 20th the company informed the union that it had been unable to set a date for the beginning of vacations because of the uncertain conditions existing, the doubtful material supply, controls by the man-power commission, and the time limit set by the war production board for deciding upon a permissible program of manufacture for the company, but that it was now possible to announce that the plants would be shut down for vacations the week beginning Sunday, August 5th. On the same date a letter was sent to all the company's employees by the company advising them that the vacation weeks for 1945 would be August 5th and August 12th.

Nevertheless, during the week of July 15th and July 22d, 1945, the plaintiff and those who were associated with him did not work and were not paid therefor. This action is to

recover pay for those who took vacations beginning July 15th and July 22d. Those who took vacations the weeks of August 5th and August 12th have been paid therefor.

It is clear that there was no contract relating to vacation periods in existence from April 28, 1944, to March 10, 1947. In his complaint the plaintiff bases his right to recover on the order of the national war labor board already referred to. However, as already stated, that order made no provision as to time of vacation. In previous years the time had been fixed by the company under contracts then existing. The question then is, Did the union or the company have the right to determine the time when vacation should be taken?

The plaintiff claimed upon the trial that one Kitzman, president of the union, had entered into an agreement with the company that vacations should be taken in July. The trial court, however, correctly held that the testimony of Kitzman in that regard was impeached by letter written by him at the time and, as stated, it appears that on June 12th the union without the approval of the defendant adopted a motion that the weeks of vacation should begin on July 15th and July 22d. Included in the motion was a direction that the "chairman of Local 180 be instructed to notify the company of this action." The plaintiff and other employees claiming vacation pay in this action took their vacations at the time designated in the resolution adopted by the union on June 12th.

Plaintiff's claim is rested in large part upon the language of section 3, article V, of the contract between the union and the company, dated February 18, 1943, which reads as follows:

"*Article V—Section 3.* Vacation assignments shall be made by the company in order to insure the orderly and efficient continuation of production, but the company agrees to give, whenever possible, the desired vacation time indicated by the employee."

That contract by its terms expired on April 28, 1944. The argument on behalf of the plaintiff is not convincing for two

reasons : First, because the language that "the company agrees to give, whenever possible, the desired vacation time indicated by the employee," does not authorize the employees taking a vacation *en masse,* and it nowhere appears that there was any request submitted on the part of any employee that the company should specify the weeks of July 15th and July 22d or any other time as his vacation period.   Second, that if resort is to be had to the contract dated February 18, 1943, the entire section must be considered.   Section 3 provides that "vacation assignments shall be made by the company in order to insure the orderly and efficient continuation of production." Plaintiff cannot avail himself of the contract of February 18, 1943, as a basis for asserting the right to a vacation period, and then claim contrary to the provision in section 3 that the union had the right to fix vacation dates.

The plaintiff contends that the court was in error in holding that the strike-settlement agreement entered into between the union and the company on March 5, 1947, included all controversies then existing between Local 180 and defendant J. I. Case Company, whether specifically mentioned therein or not, and the claims of the plaintiff and those associated with him in this action were settled by this agreement.   If the evidence relating to what was considered in the negotiations which led to the execution of the March settlement agreement was admissible the finding of the trial court is abundantly sustained by the evidence.   The court apparently admitted the evidence under the authority of *Danielson v. Bank of Scandinavia* (1930), 201 Wis. 392, 230 N. W. 83.   That the matter of vacation payments was considered in the negotiations appears from the strike-settlement agreement itself.   From the testimony admitted it appears that the matter of 1945 vacation pay was considered in the course of the negotiations. It is considered that the evidence was properly received and that the finding of the trial court is sustained.

We find no authority for the proposition that employees, either singly or *en masse,* can quit their employment on their

own motion and without an agreement with their employer for the purpose of taking a vacation and then enforce a claim for vacation pay. Vacation pay is a matter of contract between the employer and his employees. In this case it is clear that there was no contract between the union and the company applicable to the 1945 paid vacation period.

Other questions raised have had our careful consideration but they are not of such character as to merit further discussion.

*By the Court.*—Judgment affirmed.