Rose Fiance, Plaintiff, *v.* United Jewish Appeal of Greater New York, Inc., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, June 15, 1953.

20

*Bernard J. Coven* and *Arthur W. Baily* for plaintiff.

*Allen Moss* for defendant.

LYMAN, P. J. This is an action for severance pay, overtime, and vacation pay. Plaintiff's right to severance and vacation pay is based on the contract which defendant has with the union of which plaintiff is a member. Her right to overtime is based on an alleged oral agreement between her and the defendant. Concededly, plaintiff would not be entitled to severance or vaca-

tion pay if she voluntarily resigned. Plaintiff did hand in her written resignation but claims that it was obtained by duress. She does not ask to have the resignation set aside but seeks damages on the theory that the resignation was a nullity and that she was wrongfully discharged.

The first question is one of jurisdiction. Section 18 of article VI of the Constitution of the State of New York deprives this court of equitable jurisdiction. This constitutional limitation has been interpreted to mean that this court does not have the power to grant affirmative equitable relief (*McConologue* v. *McCaffery*, 29 Misc. 139; *Petersen* v. *Rose Co.*, 82 Misc. 451; *Mushcart* v. *Scher*, 136 Misc. 605), but does have the right to entertain equitable defenses (*Epstein* v. *Kaplan*, 150 Misc. 520; *Kennedy* v. *Fredsmith Plumbing & Heating Corp.*, 33 N. Y. S. 2d 945; *De Vita* v. *Pianisani*, 127 Misc. 611). Clearly, under the express language of the Constitution and the decisions, this court would not have the power to set aside the resignation even if the evidence conclusively proved that it was obtained by duress. There has not however been, as far as this court has been able to discover, any decision interpreting the constitutional limitation prohibiting this court from granting legal relief, where the granting of such relief involves equitable considerations, although there is a decision that might be considered as authority for the proposition that this court is so limited. (*Thompson* v. *Gimbel Bros.*, 71 Misc. 126, affd. 145 App. Div. 436, affd. 207 N. Y. 659.)

In the cited case the plaintiff was suing as an assignee of defendant's wages. Plaintiff failed to prove compliance with a statute requiring the assignee to file a notice of lien together with a copy of the assignment within the time prescribed by the statute. Both the decision in the lower court, in favor of the defendant, and the affirmances by the appellate courts rested on that ground. But there was language in the opinion of the lower court that indicated relief would have been denied, even if there had been compliance with the statute, because the claim was equitable in its nature. If this decision can be considered as authority for that proposition then it seems contrary in principle to the decisions permitting equitable defenses. This court does not subscribe to the view that the *Thompson* case (*supra*) is an authority for that proposition. In the opinion of this court the test is the nature of the relief sought rather than the considerations involved in granting the relief. Where the relief sought is damages then the action is legal and this court is not deprived of jurisdiction under section 18 of article VI of the

Constitution to award damages, even though the awards of such damages may involve equitable considerations.

The issues in this case then resolve themselves to the questions as to whether the facts warrant the conclusions that the resignation was obtained by duress and that there was an oral agreement to pay the plaintiff a fixed amount in lieu of overtime.

Concerning the resignation, plaintiff testified that she submitted it pursuant to the request of one of the officials of defendant after a heated discussion with this official who had berated her for an infraction of the rules. Defendant's witnesses admitted the discussion and the request for a written resignation and testified that the reason the request was made is that plaintiff had so often threatened to resign and failed to carry out the threat that they finally challenged plaintiff to carry out the threat. Plaintiff does not dispute the fact that on this occasion she did threaten to resign nor does she deny that the threat was the result of her having been called to task for refusing to conform to one of the rules of the defendant. Plaintiff admits that she typed the resignation herself and did not hand it in until a half hour later. There was no testimony by plaintiff as to any threats by the defendant other than an implied threat to discharge her if she did not adhere to the rules of the defendant. Plaintiff testified that " I can't work like that " and the official replied, " If you can't work like that, you can't work here. Send in your resignation." Even accepting plaintiff's version of this colloquy the most that can be said is that defendant threatened to discharge her if she did not adhere to the rules. Such a threat would not constitute duress (*Daly* v. *Sperry Gyroscope Co.,* 195 Misc. 169). The defendant, however, denies that any threat, implied or actual, was made. The official in question testified that she called the plaintiff into her office because of plaintiff's repeated breach of the rules and the plaintiff said, according to this witness: " If I have to take — if I have to work through whomever her superior officer was, at the moment, I can't work here. I won't work here. I'm leaving." The witness testified she then said to the plaintiff that she would not take another verbal resignation because it had happened too often and insisted that the plaintiff put the resignation in writing, which plaintiff did. The court accepts this version of what took place at the meeting and therefore finds that there was no duress in law or in fact.

The remaining question is whether there was an oral agreement to pay plaintiff a fixed amount in lieu of overtime. Plaintiff's testimony on this point is incredible. She testified that

when she was employed in 1945 the official employing her told her that she would be given three weeks' salary in lieu of overtime. In the ensuing six years until she resigned, the union negotiated several contracts with the defendant and in not one of them was there any provision for overtime. If there were such an agreement as plaintiff claims it is incredible that the union did not incorporate it in the contract which obviously was intended to cover compensation in detail.

It is quite apparent that plaintiff belatedly conceived the idea of claiming that there was a promise to pay her overtime from the fact that she had voluntarily been paid bonuses during her period of employment. But even if there were such an oral agreement it would be unenforcible under the well-established rule that prior oral agreements are merged in a subsequent written contract. (*Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334.)

Judgment for the defendant.