*Municipal Court of the City of Boston*

No. 429753

**DANIEL O'NEILL**

v.

**METROPOLITAN TRANSIT AUTHORITY**

(Oct. 26, 1956 — Feb. 21, 1957)

*Lewiton, J.* In this action of contract, the plaintiff, a former employee of the defendant, seeks to recover one week's wages in lieu of a vacation to which he claims to have been entitled when he left the defendant's employ. After denying a requested ruling that a finding for the plaintiff was required as matter of law, the trial court found for the defendant. The plaintiff claims that he was aggrieved by that ruling and finding.

It was agreed at the trial that the plaintiff was employed by the defendant from October, 1954 to March, 1956, as a power station watch engineer; that a wage agreement existed between the defendant and Local 849 of the International Union of Operating Engineers which provided for one week's paid vacation for union members of Local 849 em-

ployed by the defendant in excess of 190 days, in the calendar year of 1955; that the plaintiff worked in excess of 190 days as an employee of the defendant and as a member of Local 849 in 1955. The weekly rate of wages covering the plaintiff's job was $109.00.

There was further evidence that the plaintiff's name was posted in February of 1956 as being eligible for a vacation in 1956, that he was so regarded by the defendant, and that the plaintiff resigned as an employee of the defendant in March of 1956.

The only pertinent provisions relating to vacations in the agreement between the Metropolitan Transit Authority and the International Union of Operating Engineers, Local 849, as set forth in the report, are the following:

"VACATIONS                              ARTICLE VI
IN THE CALENDAR YEAR BEGINNING JANUARY 1, 1955, AND IN EACH CALENDAR YEAR THEREAFTER, ALL REGULAR EMPLOYEES OF THE AUTHORITY WHO ARE MEMBERS OF THE UNION SHALL BE GRANTED VACATIONS IN THE FOLLOWING MANNER:
THOSE EMPLOYEES WITH ONE (1) YEAR OF SERVICE, WHO DURING THE PRECEDING CALENDAR YEAR, WORKED AT LEAST ONE HUNDRED & NINETY (190) WORKING DAYS SHALL BE GRANTED ONE (1) WEEK'S VACATION WITH ONE (1) WEEK'S PAY, IN EACH INSTANCE AT THE FLAT RATE OF THEIR CLASSIFICATION.

IF AN EMPLOYEE HAS EARNED A VACATION, AS PROVIDED HEREIN AND DIES BEFORE HE GETS IT, VACATION ALLOWANCE MONEY SHALL BE PAID TO HIS HEIRS.
Vacations shall be assigned at the discretion of the Authority at such time during the year as can in its judgment be best arranged without detriment to the service."

At the close of the evidence, the plaintiff requested the trial court to rule that:

> "If the court finds (a) that the plaintiff was employed by the defendant from October, 1954 to March, 1956 as a power station watch engineer, (b) that a wage agreement existed between the defendant and Local 849 of the International Union of Operating Engineers providing for one week's vacation for the union member of Local 849 employed by the defendant in excess of 190 days in the calendar year of 1955, (c) that the plaintiff, as a member of Local 849, worked in excess of 190 days in the year 1955 as an employee of the defendant as a power station watch engineer, the court must find for the plaintiff."

In denying this requested ruling, the trial judge made the following finding:

> "I find that the defendant, sometime in February, 1956, posted a notice indicating that the plaintiff was entitled to a one week vacation. That he never took the vacation, but resigned before requesting it."

The court then found for the defendant.

There was no error. The plaintiff's contention is that since he has met the minimum working requirements set forth in the agreement in order to qualify for a paid vacation, he is *ipso facto* entitled to the vacation, or, since he is no longer employed by the defendant, to its cash equivalent. In our opinion, this would not be a proper construction of the agreement upon which the plaintiff's claim is based.

Thus, in addition to specifying the minimum service required of an employee in order that he qualify for a paid vacation, the agreement further provided that "vacations shall be assigned at the discretion of the Authority at such time during the year as can in its judgment be best arranged without detriment to the service." Even in the absence of the further provision therein concerning deceased employees, to which we shall refer below, there would be serious doubt whether the parties intended to

enable an individual employee by his own unilateral, voluntary act of quitting his job, to nullify the defendant's specifically granted right to assign earned vacations at the defendant's discretion. *Skibb v. J. I. Case Co.*, 255 Wis. 447; *Grobe v. Board of Review of Dept. of Labor*, 409 Ill.; *American Cent. Mfg. Corp. v. Review Board of Ind. Emp. Sec. Div.*. 119 Ind. App. 430, 436; *Bondio v. Joseph Binder, Inc.*, (La. App.) 24 So. (2d) 398, 401. Yet, that would be the effect of a ruling that the plaintiff, by voluntarily terminating his employment at a time of his own choosing, had thereupon become entitled to a week's wages in lieu of vacation, even though he could not have insisted upon taking his vacation at that particular time if he had not quit his job. The agreement should be construed, if possible, to give full effect to all of its provisions, including that which vested in the defendant the right to assign vacations. *National Shawmut Bank v. Joy*, 315 Mass. 457, 466; *Tupper v. Hancock*, 319 Mass. 105, 108; *Clark v. State Street Trust Co.*, 270 Mass. 140, 155.

Moreover, it is significant that the parties to the agreement here under consideration specifically provided that "If an employee has earned a vacation . . and dies before he gets it, vacation allowance money shall be paid to his heirs." *cf. Donlan v. Boston*, 223 Mass. 285. Had they intended similarly to create the right to a vacation allowance in favor of an employee whose employment was terminated by his own voluntary act, it would have been a simple matter for the parties to have so provided by changing but a few words in the foregoing clause. Their failure to do so is indicative of their intent not to give such benefits to an employee who quits his job before taking his vacation. *Koshland v. Columbia Ins. Co.*, 237 Mass. 467, 476; *Horvitz v. Zalkind*, 332 Mass. 125, 128; *Hamlen v. Rednalloh Co.*, 291 Mass. 119, 123; *Tynan v. KSTP, Inc.*, —— Minn. ——, 77 NW (2d) 200, 203.

While provisions in employment agreements for paid vacation are now commonly regarded as providing additional compensation for continuous service, rather than as gifts or gratuities, *Re: Wil-low Cafeterias, Inc.,* 111 F (2d) 429, 432; *Poble v. Christian,* 21 Cal. (2d) 83; *Brampton Woolen Co. v. Local,* 112 etc. 95 N.H. 255, 257; *Tynan v. KSTP, Inc.,* —— Minn. ——, 77 N.W. (2d) 200, 206., 30 A.L.R. (2d) 351, 352. it has been held by courts in other jurisdictions that if an employee who has rendered the required services for a paid vacation takes it at an unauthorized time, or voluntarily terminates his employment before taking his vacation, he is not entitled to a vacation allowance. *Skibb v. I. J. Case Co.,* 255 Wis. 447; *Bondio v. Joseph Binder, Inc.,* (1946 La. App.) 24 So. (2d) 398; *Pellett v. Ton Tex Corp.,* 77 NYS 2d 900; *Fiance v. U.J.A. of Greater N.Y. Inc.,* 122 NYS 2d 254; *Edelstein v. Duluth, M. & I. RR. Co.,* 225 Minn. 508; *Contra: Tynan v. KSTP, Inc.,* —— Minn. —— (1956), 77 N. W. (2d) 200 (where agreement contained no specific provision as to vacation allowance after termination of employment.)

The ruling complained of was correct.

*Report dismissed.*

Joseph G. Kelly, for the Plaintiff.

Charles A. McCarron and Philip A. Brine, Jr., for the Defendant.