DARLING and others, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*May 6—June 3, 1958.*

350

352

354

For the appellant Industrial Commission there was a brief and oral argument by *Arnold J. Spencer* of Madison.

For the appellant Electric Auto-Lite Company there was a brief and oral argument by *H. W. Goranson* of Toledo, Ohio.

For the respondents there was a brief by *Max Raskin,* attorney, and *Philip L. Padden* of counsel, both of Milwaukee, and oral argument by *Mr. Raskin.*

FAIRCHILD, J. Plaintiffs claimed unemployment compensation benefits for weeks 29 and 30 (1954) after they were laid off from employment at Auto-Lite. By virtue of past service and the collective-bargaining agreement in effect at Auto-Lite, plaintiffs were entitled to receive a payment of a percentage of the amount earned by them in 1953. This is referred to in the agreement as "vacation pay." It is the position of Auto-Lite and the commission that, notwithstanding the change in plaintiffs' employment status by

reason of the layoff, the vacation pay could be allocated to two weeks while plaintiffs were away from work because of the layoff so that under the statutory definition of wages (sec. 108.02 (6), Stats.) the vacation pay would be wages "payable for" such two weeks and plaintiffs not "unemployed" during them. It is their further position that Auto-Lite had the right to designate which two weeks after the layoff were vacation weeks so that it having designated weeks 29 and 30, plaintiffs could not receive benefits for those weeks.

We agree with the first of these contentions, as did the circuit court. It could be argued with considerable force that an employee's accrued right to vacation pay, earned in 1953, ripened into an obligation on the part of the company to pay the money at the time the employee was laid off (see *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 498, 82 N. W. (2d) 172) ; and that no time after the termination of employment by layoff could be considered vacation, to which the payment could be allocated. Nevertheless, because of the purpose of an Unemployment Compensation Act the courts have generally considered that vacation pay properly may be considered as wages for weeks occurring after an employee has been laid off. *Battaglia v. Board of Review* (1951), 14 N. J. Super. 24, 81 Atl. (2d) 186; *Reid v. Board of Review* (1951), 155 Ohio St. 6, 97 N. E. (2d) 31; *Renown Stove Co. v. Unemployment Compensation Comm.* (1950), 328 Mich. 436, 44 N. W. (2d) 1.

In *Wellman v. Riley* (1949), 95 N. H. 507, 510, 67 Atl. (2d) 428, 429, it was said:

"The denial of compensation under the circumstances disclosed accords with what is understood to have been the general intent of the legislature in enacting the legislation. . . . The purpose of the act is to insure in limited measure against unemployment of individuals regularly attached to the labor market which is not occasioned with their consent

or by their fault. . . . The payment of compensation for a period of vacation with pay is not within the scope of this purpose."

An employer may not retroactively designate a vacation time for a laid-off employee. *Campbell Soup Co. v. Board of Review* (1952), 20 N. J. Super. 80, 89 Atl. (2d) 262.

The rationale must be that if the vacation period be properly determined, an employee who has been laid off changes his status and becomes an employee on vacation for the designated weeks.

In adopting this proposition the probability that it has been widely accepted in practice in Wisconsin is persuasive.

It appears that the members of the advisory committee appointed under the Unemployment Compensation Act and composed of representatives of both employers and employees have considered that vacation pay can be allocated to periods of unemployment. In 1955, acting upon a recommendation of the advisory committee, the legislature also recognized this principle. The advisory committee had recommended a number of changes in ch. 108, Stats. These recommendations were incorporated in Bill No. 64, S., which became ch. 527, Laws of 1955. A note to the bill states, "This bill was prepared, and is unanimously recommended pursuant to 108.14(5m), by the statutory advisory committee on unemployment compensation, consisting of labor and management representatives." One of the changes was the creation of sub. (4) of sec. 108.05, Stats. Paragraph (b) thereof provides certain procedure for the allocation of vacation pay to weeks of "unemployment" and in the bill an explanatory note to that paragraph reads as follows:

"In most cases an employee's vacation pay is clearly allocated to a specific week, in advance; so he knows that it's wages for that week and will be so treated for benefit purposes.

"In some cases, however, an employee is unemployed before he has any vacation pay coming; or he doesn't know to what weeks his vacation pay will later be allocated. In such 'iffy' or uncertain cases, such possible pay must be ignored for benefit purposes, in order to handle claims and payments promptly.

"In such a case, if the employee later receives vacation pay which hasn't been promptly allocated to a current week of actual vacation or unemployment the employer may apply such pay to a future week of unemployment or may withhold from it benefits for a past week, as specified above."

Of course, the specific provisions of the 1955 act do not apply to this case, but it is significant that, in providing a procedure for allocation of vacation pay to weeks of unemployment, the legislature seems to have assumed that such allocation had been valid in principle, but that confusion had arisen in practice because of the absence of a statutory formula.

We therefore hold that even in 1954, if vacation pay were properly allocated to a week during a period of layoff, it was wages for that week. Where it exceeded the weekly benefit rate, the employee receiving it would not have been even partially unemployed and would not have been entitled to benefits.

The second proposition advanced by Auto-Lite and the commission is a different matter. Under the agreement could Auto-Lite designate weeks 29 and 30 as vacation for laid-off employees who preferred different weeks?

As we have pointed out, if vacation pay is to be deemed wages *for* particular weeks after an employee has been laid off, it must be upon a theory that during those weeks he is on vacation and not laid off. It would be neither logical nor fair to look to the vacation provisions of the agreement in order to characterize the payment as wages *for* weeks of *vacation* without giving full effect to any provision of the

agreement which may give the employee some rights in choosing the time of vacation.

Vacation pay is a matter of contract. *Skibb v. J. I. Case Co.* (1949), 255 Wis. 447, 452, 39 N. W. (2d) 367. In decisions involving a claim of benefits for weeks designated by the employer as vacation, the courts have uniformly considered whether any contractual provisions limited the employer's discretion in determining the dates of vacations. See cases cited in annotation, "Right to unemployment compensation as affected by vacation or holiday or payment in lieu thereof." Anno. 30 A. L. R. (2d) 366. In a Michigan case an employer designated certain weeks as vacation. It had an agreement with a union representing some of its employees which provided for vacation with pay. It had an agreement with another union, representing others, with a similar provision except that it also provided that the vacation be taken at a time mutually agreed upon and that the employees could accept pay in lieu of the vacation. The employees subject to the first contract were deemed by the court to have been on vacation and not entitled to benefits. Those under the second contract were deemed to have received bonuses rather than pay for vacation and to be entitled to benefits. *Renown Stove Co. v. Unemployment Compensation Comm., supra.*

Whether vacation pay is to be allocated to a period of shutdown or whether the employee may treat it as a bonus in lieu of vacation and the period of shutdown as unemployment is to be determined by the contract in force at the time. *Hamlin v. Coolerator Co.* (1949), 227 Minn. 437, 35 N. W. (2d) 616.

It is universally held that unless the agreement contains limitations upon the employer's discretion in setting the time for vacations, the employer has absolute discretion even though the amount of pay and length of vacation be prescribed by contract. In the agreement before us, there is a

limitation, and we are to consider the extent of the limitation and how it is to be applied to the facts before us.

The controlling provision has been quoted in the statement of facts and consists of two sentences. The first relates primarily to fixing the time of payment of the vacation pay. It contemplates that the employee will at least initiate the selection of his vacation because he is required to give two weeks' notice of an intended vacation in order to assure receipt of payment before it begins. The second sentence provides, "The vacation period shall be set at a convenient time by the company, except that the wishes of the individual employees as to their vacation period shall be taken into consideration as much as possible." In practice the company set a "period" from early June to September in which individual choices were accepted as a matter of course unless production was interfered with by a concentration of selection of particular time. A period was also designated for hunting season and employees who took leaves at times other than the designated period were permitted to call them their vacation. This practice was followed in 1954 as to all employees not laid off.

We conclude that under the agreement the selection of vacation time by individual employees was to control unless the time selected conflicted with the company's convenience as determined by the company. It did not permit the company arbitrarily to select vacation time for the individual employees without regard to their wishes. It is clear that in 1954 the company arbitrarily did so as to plaintiffs while using its former standards as to a convenient time in the cases of employees not laid off.

The term "convenient time" means one when an individual vacation will not interfere with or embarrass the company's carrying on of business. "The right to set the time for an employee's vacation was given the company so that it could fix a time that would not interfere with the company's oper-

ations." *Campbell Soup Co. v. Board of Review, supra* (p. 83).

Plaintiffs' absence during weeks 29 and 30 was no more convenient to the company than during weeks 27 and 28 or 31, 32, etc. The company's convenience evidently required, not merely permitted, these plaintiffs to be away from work from their layoff and until recall. It at least permitted some of them to be absent prior to layoff and after recall when they were on leave of absence granted by the company.

It has been suggested that the company's determination that weeks 29 and 30 were a convenient time for vacation must be honored because such determination would prevent plaintiffs from drawing benefits from the company's reserve which they could draw if other weeks, when they did not draw benefits, were recognized as their vacations. In reply to this argument, we need only point out that there was nothing which made weeks 29 and 30 more convenient or less costly to the company except in those cases where the employee preferred some other weeks in which the employee could not or did not draw benefits. It would not be a reasonable construction of article VIII of the agreement to justify the company's designation of certain weeks on the ground of pecuniary advantage to the company when the only pecuniary advantage arose out of the frustration of the employees' wishes which the agreement said "shall be taken into consideration as much as possible."

It has been suggested that the plaintiffs, by failing to notify the company of their wishes before the company designated weeks 29 and 30, waived their rights to have their personal preferences considered. Such a conclusion would be unfair under the circumstances disclosed by the record. This was the first time the company had designated two particular weeks for vacation. It was following its past practice with all employees not laid off. There was some

thought, evidenced by the union memorandum of January 7th and perhaps originally shared by the management at the La Crosse plant, that vacation pay would not affect unemployment compensation benefits. As soon as the management designated weeks 29 and 30, the employees promptly stated their positions in writing at the request of the unemployment compensation department.

In this respect, however, we conclude that the cases of plaintiffs Briggs, Wheeler, and Wallace are different from the rest. The company's position was made known to them in July. Nevertheless, up to the time of the hearing on November 9th, Briggs had not selected any particular weeks as vacation weeks and Wheeler and Wallace had selected only one week of the two to which they were entitled. It is true, of course, that these three plaintiffs were relying upon a past practice of the company whereby those employees who had not taken their time off until near the close of the year were permitted to take vacations at that time. This, however, was not a contractual right as they seemed to have thought. We cannot assume that these plaintiffs were permitted to take leave after the hearing and before the close of 1954. Plaintiff Briggs did not show that there were any weeks he was away from work in 1954 either upon leave of absence or upon layoff which he preferred to have treated as his vacation. He would not be entitled to draw benefits or wages for every week in the year and vacation pay besides. The same principle applies to plaintiffs Wheeler and Wallace except that each of them had shown one week during the period of layoff in which plaintiffs had not registered or claimed benefits. As to plaintiff Briggs the commission's order denying benefits was correct and the judgment setting it aside must be reversed. As to plaintiffs Wheeler and Wallace the commission's order of denial is correct as to week 29 but not as to week 30. The judgment setting it aside must be reversed but upon remand, it should be deemed that these

plaintiffs received vacation pay for week 29 but not for week 30. As to all other plaintiffs, the judgment should be affirmed.

*By the Court.*—As to plaintiff Briggs the judgment is reversed, and cause remanded with instructions to confirm the decision of the Industrial Commission; as to plaintiffs Wheeler and Wallace the judgment is reversed, and cause remanded with instructions to set aside the decision of the Industrial Commission only in so far as it denies the claim for benefits for week 30 and to remand the record for further proceedings upon the claim of benefits for week 30; as to all other plaintiffs the judgment is affirmed.

CURRIE, J. (*dissenting in part*). I cannot agree with the interpretation of the vacation clause of the collective-bargaining contract adopted by the majority opinion, nor with the holding that past vacation practices of the company had any materiality upon the issue of allocating weeks of vacation to layoff periods.

The material sentence of such contract governing vacations reads, "The vacation period shall be set at a *convenient* time by the company, except that the wishes of the individual employees as to their vacation period shall be taken into consideration as much as possible." The majority opinion restricts the meaning of the word *"convenient"* as only applicable to an interruption of production. This narrow and restricted interpretation overlooks entirely the right the company was undoubtedly seeking to protect by this clause.

Without any vacation clause in the contract the company would have had the unrestricted right to designate the vacation period of each employee. This right continued under the contract except in so far as it was yielded up by the clause in question. Under such clause the company's convenience still controlled, and the right of an employee to select a particular time for his vacation was subject to the express limitation that it would not interfere with the company's

convenience. It surely would not have been the objective of the company to safeguard production as an end in itself but rather its costs of production. Among such costs were its contributions required under the Wisconsin Unemployment Compensation Act. Prior to 1954 the company had experienced a steady level of employment so that its unemployment compensation account had been built up to the point of requiring little or no further annual contributions. Any depletion of such account by payment of benefits would have to be replaced by the company by means of further contributions.

Therefore, in the situation which confronts us here, where employees were on layoff and the controversy is over whether weeks of such layoff period selected by the company or the employee shall govern, the real issue of convenience resolves itself down to cost. It will be of less expense for the company to have its designation of weeks 29 and 30 prevail, while certain plaintiffs would gain financially by having the vacation pay applied to other portions of the layoff period. Employees falling in this category are the plaintiffs Darling, Brudos, Harnisch, and Stein.

Up until the 1954 layoff for lack of business there had been no past practice with respect to designating weeks of vacation during a layoff. The situation with respect to such a layoff is so entirely different than that which prevails during production that it is difficult to see why past practices during production, as to permitting employees to have some choice of selection of their weeks of vacation, should have any application whatever to a period when they are on layoff.

Here, before weeks 29 and 30 arrived, the company designated such two weeks as the weeks of vacation for employees on layoff and paid them their vacation pay in advance of the beginning of such two weeks. This should be conclusive as to all plaintiffs who had not prior thereto, with the company's approval, designated different weeks for their vacations.

However, the company had no right retroactively to change weeks of vacation previously selected by the employees. The claims for benefits of the plaintiffs Foellmi, Nolte, and Gildermeister for both weeks, and Schaffer, Wallace, and Wheeler as to one week each, should have been allowed on this basis. It is for this reason that I concur in the result of the majority opinion to this extent.

The claims of the plaintiffs Lemke, Schaffer, Wallace, and Wheeler as to their second week of vacation, and the plaintiff Briggs as to both weeks of vacation, fall into still another category. They contended that they had the right to wait until the layoff ended and the production had again started and then take their remaining vacation time to which they were entitled even if this did not occur until the last two weeks in December. Even under the majority opinion's highly restrictive interpretation of what was *"convenient"* for the company, it would seem to be inescapable that it would be more convenient for the company to have them take their vacation during the months of layoff rather than after production had resumed.

For the reasons hereinbefore stated, the following are the only claims of the plaintiffs which should have been allowed:

> Foellmi for both weeks.
> Gildermeister for both weeks.
> Nolte for both weeks.
> Lemke for one week.
> Schaffer for one week (conceded by the company).
> Wheeler for one week.
> Wallace for one week.
> Chapman for one week.

The judgment of the circuit court in so far as it allowed claims of the plaintiffs beyond this should be reversed.

I am authorized to state that Mr. Justice BROADFOOT joins in this dissenting opinion.