McGRAW-EDISON COMPANY, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Appellant: SMITH and another, Defendants.

*Nos. 646, 647 (1974). Argued March 2, 1976.— Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 148.)

For the appellant the cause was argued by *James L. Pflasterer,* attorney, with whom on the brief were *Uclair W. Brandt,* chief counsel, and *David A. Pearson,* assistant chief counsel.

For the respondent there was a brief by *Walter S. Davis, John P. Savage* and *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.* of Milwaukee, and oral argument by *Mr. Savage.*

BEILFUSS, J. The question before the circuit court and now before this court upon appeal is whether DILHR misconstrued the unemployment compensation statutes so as to grant unemployment compensation benefits to employees who have received lump-sum retirement benefits from a retirement fund provided for, in the main, by the employer.

Paul K. Smith and Donald Kunde were longtime employees of McGraw-Edison. On December 31, 1970, and May 31, 1972, respectively, they retired, having reached the employer's compulsory retirement age of sixty-five. Both had participated in the employer's profit sharing plan, to which the employer made at least 70 percent of the contributions. Smith had accrued benefits of $21,300.25, and Kunde $23,239.12. Both of them elected to receive their benefits in the form of a single lump-sum payment, as an alternative to receiving a lifetime monthly annuity or receiving their benefits in installments over a period of up to fifteen years. Although the trustees of the employer's pension plan reserve legal control to determine the method of benefit distribution, there is no evidence that employees' elections have ever been refused. DILHR does not argue that Smith and

Kunde did not exercise effective control over whether they received a lump sum or periodic distribution.

Both Smith and Kunde filed claims for unemployment compensation within a few weeks of their retirement. McGraw-Edison protested that the lump-sum retirement benefits should be considered as "retirement payments" within the meaning of sec. 108.04 (15), Stats.,[1] and applied to offset unemployment compensation benefits under sec. 108.05 (3).[2] In both cases, DILHR's initial

---

[1] "108.04 **Eligibility for benefits.** . . . (15) RETIREMENT PAYMENTS. If an employe claims benefits based on his past work for a covered employer, but such employer duly notifies the department pursuant to sub. (13), and the department determines, that the employe is receiving or has claimed and will receive, or has been retired at such employer's compulsory retirement age and could claim and receive, retirement payments, as to any week covered by his benefit claim, under a group retirement system to whose financing any employing unit has substantially contributed or under a government retirement (or old-age insurance) system or under both, then the benefits thus claimed:

"(a) Shall be determined pursuant to sub. (7), if the employe left his employment with that employer to retire before he reached the compulsory retirement age used by that employer.

"(b) Shall not be denied for any such week, from the account of such employer, if the employe is otherwise eligible and left or lost his employment with that (or any other) employing unit because he had reached the compulsory retirement age used by the employing unit in question.

"(c) Shall, if payable, be determined for any such week by treating as if it were wages:

"1. That amount of the employe's weekly rate of retirement payments which has been financed by his employer or others (and not by the employe's own contributions), under any retirement system where such amount is separately calculated or can be estimated with reasonable accuracy, provided acceptable evidence as to such amount is furnished the department.

"2. All but $10 of the employe's weekly rate of retirement payments under one or more other retirement systems."

[2] "108.05 **Amount of benefits.** . . . (3) BENEFITS FOR PARTIAL EMPLOYMENT. (a) If an eligible employe's total wages for a given week are less than his applicable weekly benefit rate, but are at

determination was that the lump-sum payments should not be considered retirement payments, and should not be applied to reduce unemployment compensation benefits.

The employer appealed from these determinations, and in each case a hearing was held before an appeal tribunal consisting of an examiner. The evidence at each hearing established that the employees had chosen to take their retirement benefits in the form of a monthly annuity, the amounts received would have been sufficient, when combined with social security benefits being received, to disqualify the employees from unemployment compensation under the terms of sec. 108.05 (3), Stats.[3] These calculations are not disputed by DILHR. In each case the examiner concluded that where the employee had claimed a previous lump-sum benefit from the employer, but could not claim any future benefits, that the employee was not in a position where he "could claim and receive" any benefits within the meaning of sec. 108.04 (15), and that, therefore, he was not receiving retirement payments such as to reduce or eliminate his unemployment compensation benefits. The employer appealed to the DILHR, which affirmed the examiner's decisions without further comment.

The construction of the unemployment compensation statute quoted above[4] is a question of law. Therefore

---

least one half of said rate, he shall be paid one half of his weekly benefit rate for such week.

"(b) If an eligible employe's total wages for a given week are less than one-half of his applicable weekly benefit rate, he shall be paid his full weekly benefit rate for such week."

[3] The annuity levels attributable to the employer's contributions were $38.11 per week for Smith and $39.40 per week for Kunde. Combined with their social security benefits (treated as weekly wages) of $43.69 and $49.24, respectively, the totals of $81.80 and $88.64 exceed the weekly respective unemployment compensation benefit levels of $72 and $88.

[4] Secs. 108.04 (15) and 108.05 (3), Stats. *See:* footnotes 1 and 2.

the courts are not bound by the interpretation placed upon them by the department[5] although such interpretation is entitled to considerable weight. If the interpretation adopted by the department is unreasonable the court should reject it.[6]

The language of the statute (sec. 108.04 (15)) that must be judicially construed is whether the employees "could claim and receive, retirement payments, as to any week covered by his benefit claim, under a group retirement system to whose financing" the employer has substantially contributed.

In the two cases at hand the employer has made substantial contributions to the retirement plan. The plan gave the employees three options whereby they could claim benefits. They could, subject to the approval of the trustee, claim (a) a lump sum, (b) a lifetime monthly annuity, and (c) installments over a period not to exceed fifteen years. The employees in these cases claimed and received a lump sum.

In interpreting the statute the department concluded that the employees could not claim and receive retirement benefits for any week other than the week in which they elected and received the lump sum. The circuit court concluded the interpretation by the department was unreasonable in view of its legislative history and prior department interpretation; and, further, that under the plan the employees did have the option and could, at their election, claim and receive retirement benefits for the subsequent weeks so as to effect their eligibility for unemployment compensation benefits for those weeks. We agree with the circuit court.

---

[5] *Cheese v. Industrial Comm.* (1963), 21 Wis. 2d 8, 123 N. W. 2d 553; and *McGraw-Edison Co. v. ILHR Department* (1974), 64 Wis. 2d 703, 221 N. W. 2d 677.

[6] *Board of Sch. Directors of Milwaukee v. WERC* (1969), 42 Wis. 2d 637, 168 N. W. 2d 92; *Fish v. White Equip. Sales & Service, Inc.* (1974), 64 Wis. 2d 737, 221 N. W. 2d 864.

Section 108.04 (15), Stats., was first adopted in 1951, primarily in response to a Dane county circuit court case that completely denied unemployment compensation benefits to retired employees who participated in a pension plan where they were required to retire.

The section then provided reads as follows:

"(15) RETIREMENT PAYMENTS. If an employe claims benefits based on his past work for a covered employer, but such employer duly notifies the commission pursuant to sub. (13), and the commission determines, that the employe is receiving or *has claimed and will receive retirement payments,* as to any week covered by his benefit claim, under a group retirement system to whose financing any employer has substantially contributed or under a government retirement (or old-age insurance) system or under both, then the benefits thus claimed: . . . ." (Emphasis supplied.)

Subsequent amendments were made to sec. 108.04 (15), Stats., by the legislature in 1963, 1965 and 1969. For our purpose here, the significant amendment was in 1965 when the legislature added the language ". . . or has been retired at such employer's compulsory retirement age and *could claim and receive.* . . ." (Emphasis supplied.)

An administrative decision prior to the 1965 amendment held that a claimant's unemployment compensation benefits should not be reduced if a claimant-retiree has failed to claim social security benefits. An advisory council note to the bill which became the 1965 amendment, stated:

"NOTE: Those changes will require the commission to consider the retirement pay of an employe who has been retired, even if he hasn't yet claimed some of it (*e.g.,* his social security)."

The trial court rejected the department's argument that the amendment applied only to those claimants who deferred making a claim for retirement benefits although

he could have done so and that it did not apply to situations where the claimant by electing a lump-sum payment found himself where he could not make claim for retirement benefits during the subsequent weeks of unemployment eligibility.

The trial court concluded that language of the statute did not so restrict the application of the statute. In support of its conclusion the trial court quoted at length from a prior department decision[7] which took an entirely contrary position. That decision states in part:

". . . The lump sum payment was properly allocable to subsequent weeks of unemployment, as such allocation was likewise within the discretion of the trustees under the terms of the trust. They paid him a lump sum because that was his request, but they could have refused his request. Such income was retirement income, whatever the method of payment."

In addition to the legislative history referred to above, to determine legislative intent, related statutes should be construed together.[8] The unemployment compensation law, ch. 108, Stats., contains at least four provisions suggesting a legislative intent not to allow employees to receive multiple benefits whose purposes overlap, characterized by the employer here as "windfall" benefits. Section 108.05 (4), (5) and (6), provides that vacation pay, severance pay, and back pay awards shall be considered as wages for the purpose of offsetting unemployment compensation benefits. Section 108.04 (12) contains a list of benefits available under other state and federal programs that, if received, disqualify an employee from receiving unemployment compensation benefits.

---

[7] Case 63–A–1901 (C), Wis. U. C. Digest, 1966 Supplement, p. 308.

[8] *State v. Lamping* (1967), 36 Wis. 2d 328, 340, 153 N. W. 2d 23.

In *Darling v. Industrial Comm.* (1958), 4 Wis. 2d 345, 90 N. W. 2d 597, this court decided that accrued vacation pay could be allocated over a layoff period, disqualifying employees from unemployment compensation eligibility. The court viewed the purpose of unemployment compensation as being to protect individuals discharged without fault; where protection was already being provided through vacation pay, it was not intended that unemployment compensation benefits be available. While *Darling* was decided prior to the present version of sec. 108.05 (4), Stats., the vacation pay statute, it is indicative of the court's opinion of the policies behind the unemployment compensation statutes.

The employer argues persuasively that at no place in the statutes, and at no time in their legislative history, is there evidence of any intent to allow employees to claim additional benefits resulting from their unemployment from more than one source; indeed, all indications of legislative intent are to the contrary. The public policy underlying unemployment compensation, as set forth in sec. 108.01, Stats., includes statements that "[e]ach employing unit in Wisconsin should pay at least a part of this social cost [of unemployment], connected with its own irregular operations, by financing compensation for its own unemployed workers," and that "[a] sound system of unemployment reserves, contributions and benefits should induce and reward steady operations by each employer." To the extent that McGraw-Edison's operation is "irregular" because of its mandatory retirement age, it has financed compensation for its discharged employees by providing for retirement payments to them. To require additional payment of unemployment compensation benefits would not "induce and reward" steady operations, and would run counter to the public policy expressed in sec. 108.01. The policy of sec. 108.04 (15) is generally to prevent the overlap of pension and unemployment compensation benefits. DILHR seeks to dis-

tinguish lump-sum retirement payments from annuity or installment-type payments. There is no statutory, historical or logical basis for this distinction.

Even aside from any unfairness to employers or "windfall" benefits to employees, a policy argument can be made against DILHR's interpretation of sec. 108.04 (15), Stats., on the ground that, in the long run, such an interpretation will harm rather than help retired employees by encouraging elimination of the lump-sum payment as a means of distributing retirement benefits. While the nature and governance of pension funds in general is not part of the record here, it is apparent that at least McGraw-Edison did not establish its pension plan in the expectation that employees could claim both lump-sum retirement payments and unemployment compensation benefits. If DILHR's interpretation is accepted, McGraw-Edison and other similarly situated employers can be expected to use whatever means they have— unilaterally or in collective bargaining—to eliminate the lump sum form of benefit. To the extent they are successful, all employees will suffer a reduction in their options for receiving retirement benefits.

DILHR offers no real response to the employer's arguments concerning the legislative history and *in pari materia* construction of sec. 108.04 (15), Stats. DILHR mentions the "supplemental unemployment benefit" plans now in effect to provide employer-funded benefits over and above unemployment compensation during periods of unemployment. Such programs are entered into for the express purpose of supplementing unemployment compensation benefits and are not analogous to retirement benefits which, under sec. 108.04 (15), are a substitute for unemployment compensation benefits, at least if paid in annuity or installment form. DILHR presents no policy rationale to support its argument that lump-sum payments should be treated differently from financially identical annuity or installment payments.

DILHR argues that it would be administratively difficult to properly allocate lump-sum retirement payments over the period of retirement; employers would naturally prefer an allocation which maintains a weekly level of income above the employee's unemployment compensation benefit level during the year he would be eligible for unemployment compensation benefits (under sec. 108.061, Stats.), while employees would naturally prefer an allocation over the longest possible period in order to reduce the weekly level below the amount necessary to completely offset unemployment compensation benefits.

Difficulties of allocation have not prevented it from being accomplished in other contexts. Section 108.05 (4) and (5), Stats., concerning vacation and severance pay, provide that such pay may be allocated at the employee's weekly wage rate, or "[p]ursuant to any other reasonable basis of allocation." Under sec. 108.04 (15), retirement payments also must be allocated according to "the employe's weekly rate of retirement payments."

The legislature did not provide any formula for determining the "weekly rate of retirement payments." Where a lifetime annuity is being received, the "weekly rate" would seem obviously to be the amount of the annuity payment divided by the number of weeks between payments. When the pattern of payments departs from the straight line annuity model, two problems may arise. The first is that of the present case: the front-loaded lump-sum payment. We conclude the reasonable interpretation of the term "weekly rate of retirement payments" in this case is the weekly value of a lifetime annuity that could be purchased with the amount of the lump-sum payment. A pension plan is, by definition, intended to provide a greater or lesser stipend during the rest of the employee's life. It is entirely reasonable to allocate the pension over the employee's actuarial life, as an annuity would do. This interpretation of the statu-

tory term "weekly rate of retirement payments" will function both ways: where the lump-sum payment is small and life expectancy great, the equivalent annuity will be so small as not to entirely offset a claim for unemployment benefits; in the present case, the equivalent annuity is apparently large enough to offset unemployment compensation benefits.

The second problem that may arise in allocating retirement payments occurs when the employee chooses (as might have occurred in the present case) to receive a series of installment payments over a period exceeding his life expectancy. On a weekly basis, such payments will be less than the equivalent annuity, and might be less than the amount necessary to disqualify the employee from unemployment benefits. If an employee claims unemployment compensation benefits under this circumstance, may the employer reallocate the installment payments back into the period of the employee's life expectancy, such as to increase the current "weekly rate of retirement payments" and disqualify the employee from unemployment compensation benefits? This problem is not presented or argued in the present case and need not be decided.

The parties have cited authorities from other jurisdictions. We do not believe a discussion of those authorities is necessary and would only serve to prolong this opinion.

We conclude the trial court correctly interpreted sec. 108.04 (15), Stats., to include lump-sum retirement payments and that the cases should be remanded to the department to compute the weekly rate of annuity which the lump-sum retirement payment could purchase over the employees' remaining actuarial life and apply this amount to their unemployment compensation benefits.

*By the Court.*—Judgment affirmed and remanded to the Department of Industry, Labor & Human Relations for further proceedings not inconsistent with this opinion.

HEFFERNAN, J., took no part.