CITY OF MILWAUKEE, Petitioner-Appellant

V.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and Kathleen Meingast, Helen Vick, Joanna Cobb, Elizabeth Hooser, Ellen Barczak and Ethel Wilson, Respondents.†

Court of Appeals

*No. 80–1558. Submitted on briefs April 15, 1981.—
Decided May 15, 1981.*
(Also reported in 309 N.W.2d 1.)

† Petition to review granted. HEFFERNAN, J., took no part.

For the petitioner-appellant the cause was submitted on the briefs of *Patrick B. McDonnell,* assistant city attorney.

For the respondents the cause was submitted on the brief of *Barry M. Levenson* of the Department of Industry, Labor and Human Relations.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J. The City of Milwaukee (City) appeals from a judgment affirming a determination by the Department of Industry, Labor and Human Relations (DILHR) finding that the individual respondents in this action are eligible to collect unemployment compensation.

The individual respondents were employed by the City to serve as school crossing guards at various schools in Milwaukee. They were employed for the regular nine-month school term. Their work hours corresponded to the hours the schools were in session. The crossing guards had no responsibilities other than monitoring crossings in areas adjacent to the schools. The guards applied to receive unemployment compensation during

the 1978 summer recess period. DILHR determined they were eligible to collect the benefits. The City appealed the decision to the circuit court which affirmed DILHR's action.

The City contends that the crossing guards are ineligible for benefits under sec. 108.04(17)(b), Stats., which excludes from unemployment compensation coverage during the period between successive academic years, an individual who "performs services for a nonprofit or public educational institution."[1] DILHR contends that this statutory section requires exclusion only when the individuals are *employed* by the nonprofit or public educational institution. Under DILHR's interpretation the crossing guards would be eligible for benefits because they were employed by the City and not by the educational institutions.

The sole issue on appeal is whether the statutory language "performs services for a nonprofit or public educational institution" means that the individual must be employed by that institution. The parties agree that the other conditions for exclusion under sec. 108.04(17)(b), Stats., exist. We determine that an individual does not have to be employed by the educational institution to be excluded from unemployment compensation coverage under sec. 108.04(17)(b).

---

[1] Sec. 108.04(17)(b) provides:

An employe who performs services for a nonprofit or public educational institution, other than an institution of higher education and other than in an instructional, research or principal administrative capacity, is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or terms if such employe performed such services in the first such academic year or term and there is a reasonable assurance that such employe will perform such services in the 2nd such academic year or term.

Although an administrative agency's decision regarding a question of law, such as the interpretation of a statute, is entitled to considerable weight, it is not binding on a court reviewing the action of that agency.[2] We recognize, however, the expertise and insight of the agency in our consideration of the issue.

One of the basic rules of statutory construction is that clear and unambiguous language shall be given its ordinary and accepted meaning.[3] If the language of a statute is unambiguous, further statutory interpretation or inquiry into legislative intent is improper.[4] We determine that the language "performs services for a nonprofit or public educational institution" is clear and unambiguous and should be accorded its usual and plain meaning. Further inquiry into legislative intent by DILHR and the circuit court was error.

The section very simply states that the individual must perform services for the institution to be excluded from coverage for the period in question. Nowhere in the section does it say the individual must also be employed by the institution to be so excluded. An employment requirement has no basis whatsoever in the text of the statute.

The crossing guards undoubtedly performed services for the schools. Their job was to aid children crossing the streets adjacent to the school. They were not providing this service for the people in the neighborhood or the public at large; they were serving the schools in pro-

[2] *McGraw-Edison Co. v. DILHR*, 72 Wis.2d 99, 102–03, 240 N.W.2d 148, 150 (1976).

[3] *State v. Engler*, 80 Wis.2d 402, 406–07, 259 N.W.2d 97, 99–100 (1977).

[4] *Id.* at 406, 259 N.W.2d at 100.

viding for the safety of their students. They worked only during the hours and days the schools were in session, and their sole responsibility was to provide this service for the schools.

In addition to being contrary to the plain meaning of the statute, the interpretation urged by DILHR makes no sense. It is illogical to deny benefits to one crossing guard yet pay benefits to another simply because one is paid by the City and the other is paid directly by the school district. They would perform the same job under the same conditions and should receive the same treatment. Indeed, DILHR concedes the irrationality of this difference when it states that treating teachers employed by an employment service agency differently than those employed directly by the school district is illogical.[5]

A consideration of the crossing guards' employment circumstances further emphasizes the absurdity of a difference in treatment depending upon whether they were hired by the City or by the schools. The crossing guards, as City employees, are presently selected and hired in the same manner as are nonteaching school district employees. Both the crossing guards, City employees, and the school district employees are paid out of the City treasury. This is because the City treasurer collects taxes for the school district and then remits the money to the school district. We see no logic in treating the crossing guards differently depending on who they are employed by when the City and the school district have the same hiring procedure, pay the salaries of their employees out of the same fund and most importantly, when the crossing guards would be performing the same job for either employer.

Because DILHR acted in excess of its powers in granting unemployment benefits to the crossing guards when

---

[5] Brief of Respondent at 15.

they are ineligible to collect such benefits under sec. 108.04(17)(b), Stats., we set aside the determination of DILHR and the judgment of the circuit court affirming that determination.[6]

*By the Court.*—Judgment reversed.