PATTENGE and others, Respondents, vs. WAGNER IRON WORKS, Appellant.

*March 7—April 9, 1957.*

For the appellant there were briefs by *Morris Karon* and *Karon & Weinberg,* all of Milwaukee, and oral argument by *Morris Karon.*

For the respondents there was a brief by *Max Raskin,* and oral argument by *Mr. Raskin* and by *Mr. Leonard S. Zubrensky,* both of Milwaukee.

WINGERT, J. 1. The plaintiffs' action is not barred by the fact that the asserted right to vacation pay arises under the terms of a collective-bargaining contract to which the plaintiffs are not parties. The weight of authority, and the trend of the more-recent cases, permits an individual employee to maintain an action to enforce provisions of a collective-bargaining contract which are for his individual benefit, as contrasted with provisions which are for the benefit of the union. See Anno. 18 A. L. R. (2d) 361, 365; *Employees v. Westinghouse Electric Corp.* 348 U. S. 437, 460, 75 Sup. Ct. 489, 99 L. Ed. 510; *Hudak v. Hornell Industries,* 304 N. Y. 207, 214, 106 N. E. (2d) 609; 31 Am. Jur., Labor, p. 880, sec. 119, and 1956 cumulative supplement, p. 112, sec. 119. In the present case we need go no further than to hold that the employee may sue on a specific money claim which has accrued to him under the terms of the collective-bargaining contract.

The provisions of the contract for vacation pay are clearly for the benefit of the individual employees rather than for that of the union as such. In the absence of something in the contract to the contrary, vacation pay is in the nature of additional compensation for services rendered. *In re Wil-Low Cafeterias* (2d Cir.), 111 Fed. (2d) 429, 432, and see Anno. 30 A. L. R. (2d) 352. An action by individual employees to recover vacation pay provided by a collective-

bargaining contract was entertained on the merits without question in *Skibb v. J. I. Case Co.* 255 Wis. 447, 39 N. W. (2d) 367.

2. In such a case it is not necessary that the union be joined as a party to the action. In legal effect the employee sues on his individual contract of hire, into which the applicable terms of the collective-bargaining contract which are for his benefit are imported by law. See *J. I. Case Co. v. National L. R. Board,* 321 U. S. 332, 335, 336, 64 Sup. Ct. 576, 88 L. Ed. 762.

3. The action is not barred or subject to abatement because of failure to exhaust, or even invoke, the grievance and arbitration procedure set up by the collective-bargaining contract.

We may assume for present purposes, without deciding, that the company's refusal to pay vacation pay to the plaintiffs constituted a grievance within the meaning of the contract, and that the facts that the contract terminated on July 1st and that plaintiffs had ceased to be employees would not have barred them from access to the grievance procedure specified by the contract.

The contract is explicit that where available the grievance procedure "shall be the sole means of disposing of grievances." Nevertheless we consider that in the special circumstance of the present case, plaintiffs were not bound to invoke the grievance procedure or arbitration in lieu of an action at law.

The contractual grievance procedure consisted of three steps before arbitration. The first step specified an effort to settle the grievance by the complaining employee, the shop steward and the "squad leader" or foreman. The second and third steps required conferences between union representatives and company representatives, to which the complainant was not made a necessary party. Obviously the union would dominate those proceedings on the complain-

ant's side, it doubtless having been contemplated that in the normal case the union would act as the employees' agent and advocate.

We do not construe the contract or the law as requiring an individual employee to invoke this grievance procedure to assert an accrued pecuniary claim in circumstances where it is reasonably apparent that the union is hostile to him and will not give him adequate representation. To do so would place the employee's accrued rights against his employer more or less at the mercy of an unfriendly union. Both congress and the Wisconsin legislature have shown solicitude to protect employees from such consequences, by the provisions of the 1947 Federal Labor Management Act, 61 U. S. Stats. at L., p. 143, sec. 9 (a), and the Wisconsin Employment Peace Act, sec. 111.05 (1), that any individual employee shall have the right at any time to present grievances to the employer. See discussion and authorities cited in Lenhoff, The Effect of Arbitration Clauses upon the Individual, 9 Arbitration Journal, 3, and *Elgin J. & E. R. Co. v. Burley,* 325 U. S. 711, 733, 736, 65 Sup. Ct. 1282, 89 L. Ed. 1886.

Here the plaintiffs were CIO sympathizers, engaged in a revolt against the AFL union. They were striking in sympathy with some of their leaders in the CIO faction, who had been discharged earlier. They were notified by the AFL union on June 20th that if they did not go back to work, the company would be justified in permanently replacing them. The union business agent testified that he had instructions from the president and board members of the union to refuse to arbitrate the differences between the management and the discharged leaders. The AFL union did nothing to represent the strikers in any grievance or arbitration growing out of their discharges. It was war between the unions, and from the AFL union's standpoint, and that of the company, plaintiffs were with the enemy. Plaintiffs could reasonably believe that no sympathy or

help could be expected from either the AFL union or the company.

In a proceeding arising out of this same interunion fight, the national labor relations board held that the discharge of the present plaintiffs was an unfair labor practice and the company was ordered to reinstate them with back pay. The board also held the AFL union guilty of the unfair labor practice of coercing employees and contributing to the employer's discharge of two of the plaintiff leaders of the movement to the CIO union.

The court of appeals of the Seventh federal circuit sustained the board's findings on these matters and entered judgment enforcing its orders against the employer and the AFL union. *National L. R. Board v. Wagner Iron Works* (7th Cir.), 220 Fed. (2d) 126. The court made the following comments pertinent to the present case (pp. 136, 137) :

"Failure of the McMahons, Gould, and Steffes, to arbitrate the question of the validity of their discharges can be of no avail to the company. As the procedures of the contract including arbitration were set up in the agreement with AFL, it is extremely doubtful that that union would object seriously to the discharge of CIO adherents, in the course of an all out battle between two unions for representation.
. . .
"Substantial evidence on the record as a whole adequately supports the findings that the company supported and fostered AFL."

Following the provisions for attempted settlement of grievances between union and company representatives, the contract provided that any dispute not satisfactorily settled in accordance with the first three steps "shall, upon the written request of *either party to this agreement*" be submitted to arbitration. The individual employee was not a party to the contract and hence arbitration was not available to him unless either union or company requested it. The company did not seek to arbitrate. The trial court found

as a fact "that a request for arbitration by the plaintiffs, or any one thereof, would have been unavailing." The finding has support in the evidence.

Since plaintiffs had abundant reason for not invoking the grievance procedure, because of the union attitude, and since they could not demand arbitration as a matter of right, it follows that their court action was not barred or subject to abatement by their omissions in those respects.

In a recent New York case, a wrongfully discharged employee was permitted to sue the company at law for breach of a provision of a collective-bargaining contract in his favor without recourse to arbitration as provided by the contract, where the union did not champion his cause and had no dispute with the employer, and where as here the individual employee could not demand arbitration as a matter of right. *Hudak v. Hornell Industries,* 304 N. Y. 207, 214, 106 N. E. (2d) 609.

We intimate no opinion as to whether the plaintiffs' action would have been barred or subject to abatement by reason of failure to invoke grievance and arbitration procedures if there had been no reason to doubt that the union would represent them zealously in the advocacy of their claims.

4. We come now to the merits of plaintiffs' claim for vacation pay. One of the contractual conditions of eligibility for vacation pay was that the employee must have been "in the continuous service of the company for at least twelve months next prior to June 1st, the eligibility date." All but four of the plaintiffs clearly met this test. Plaintiff Gust Gould was discharged on May 28, 1951, but his discharge was held unlawful by the national labor relations board, and by the court of appeals on review of the board's findings. As those tribunals had jurisdiction of the subject matter under applicable federal law, the trial court properly held that Gould's discharge did not prevent him from becoming

eligible for vacation pay on June 1st. See *Zwolanek v. Baker Mfg. Co.* 150 Wis. 517, 525, 137 N. W. 769.

The trial court found as facts that plaintiffs Roy McMahon, Roger Kearns, and David Perry were hired on June 6, 12, and 26, 1950, respectively. Hence, apparently, they had not been in the continuous service of the company for at least twelve months next prior to June 1, 1951, and did not meet that requirement of eligibility for vacation pay. As to them the judgment must be reversed as not supported by the findings; but since appellant did not challenge the eligibility of these three men on that ground, in either its brief or argument, and there may conceivably be something in the record to vindicate their claim of eligibility which we have overlooked, we shall remand their cases to the trial court for appropriate disposition without an absolute direction to dismiss the complaint as to them.

Appellant contends that plaintiffs violated the no-strike clause of the collective-bargaining contract by going on strike, that therefore they were discharged for good cause, and that since their claim is founded on the same contract, their breach of contract forfeited their right to vacation pay. We think a sufficient answer to that contention is provided by section 17 (E) of the contract, which provided that "any person who has become eligible for a vacation . . . shall be entitled to receive his or her vacation pay, if at any time before receiving the vacation or pay, his or her employment relations with the company have been severed *for any reason.*" All of the plaintiffs except the three hired after June 1, 1950, had become entitled to vacation pay on June 1, 1951, and hence were entitled by explicit terms of the contract to receive such pay, regardless of the reason for which they were discharged.

The appropriate federal tribunals have held that since the strike was motivated by the company's unfair labor

practices it was not a breach of the no-strike clause of the contract. *National L. R. Board v. Wagner Iron Works* (7th Cir.), 220 Fed. (2d) 126, 140, 141. In the light of provisions of the National Labor Relations Act applicable to this industrial unit, the United States supreme court has construed a comparable no-strike clause in a collective-bargaining contract as not waiving the right of employees to strike solely against unfair labor practices of their employer. *Mastro Plastics Corp. v. National L. R. Board,* 350 U. S. 270, 279–284, 76 Sup. Ct. 349, 100 L. Ed. 309.

In the circumstances, we consider that plaintiffs did not forfeit vacation pay for which they had already become eligible, by going on strike.

*By the Court.*—Judgment affirmed with respect to all of the plaintiffs but Roy McMahon, Roger Kearns, and David Perry. As to them, the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion. Appellants shall pay the costs in this court.