CLARK and others, Plaintiffs and Respondents, v. HEIN-WERNER CORPORATION, Defendant: INTERNATIONAL ASSOCIATION OF MACHINISTS, LOCAL 1377, A.F.L.-C.I.O., Defendant and Appellant.*

*October 6—November 3, 1959.*

* Motion for rehearing denied, without costs, on January 5, 1960.

266

For the appellant there was a brief by *Robert E. Gratz*, attorney, and *Daniel L. Shneidman* of counsel, both of Milwaukee, and oral argument by *Mr. Gratz.*

For the respondent there was a brief and oral argument by *John H. Wessel* of Milwaukee.

A brief was filed by *Goldberg, Previant & Cooper,* attorneys, and *David Previant* and *Hugh Hafer* of counsel, all of Milwaukee, for the Wisconsin State A.F.L.–C.I.O., as *amici curiae.*

CURRIE, J. The seniority rights sought to be protected by the plaintiffs are grounded upon the collective-bargaining

contract. Although the employer is engaged in interstate commerce the action does not involve an unfair labor practice under the Labor Management Relations Act of 1947, as amended, and, therefore, the controversy does not fall within the jurisdiction of the national labor relations board. It is a type of action over which state courts and federal courts have concurrent jurisdiction. *McCarroll v. Los Angeles County Etc., Carpenters* (1957), 49 Cal. (2d) 45, 315 Pac. (2d) 322 (certiorari denied, 355 U. S. 932, 78 Sup. Ct. 413, 2 L. Ed. (2d) 415); *Steinberg v. Mendel Rosenzweig Fine Furs* (1957), 9 Misc. (2d) 611, 167 N. Y. Supp. (2d) 685; *Ingraham Co. v. Local 260, International U. of E., R. & M. Workers* (D. C. Conn. 1959), 171 Fed. Supp. 103.

The plaintiff employees were not parties to the collective-bargaining contract and under the grievance procedure set forth therein were given no right to initiate arbitration or to participate in the arbitration once it was set in motion. The instant appeal presents the problem of when, if ever, can judicial protection of the rights of individual employees through the arbitral process be invoked. This is a problem which has greatly troubled the courts and legal writers.[1]

So long as the union is fighting the battle of the employees through the arbitration proceeding the employees' interests are being represented and there is no need for courts to provide protection to the employees. Sound public policy dictates that a court should not interfere with or

[1] Lenhoff, The Effect of Labor Arbitration Clauses Upon the Individual, 9 Arbitration Journal (1954), 3; Isaacson, Labor Arbitration in State Courts, 12 Arbitration Journal (1957), 179, 184; Cox, Rights Under a Labor Agreement, 69 Harvard Law Review (1956), 601; Manson, Labor Relations Law, 32 New York University Law Review (1957), 1365, 1374; Rights of Individual Workers in Union-Management Arbitration Proceedings, 66 Yale Law Journal (1957), 946; Industrial Due Process and Just Cause for Discipline: A Comparative Analysis of the Arbitral and Judicial Decisional Processes, 6 U.C.L.A. Law Review (1959), 603, 628.

disturb the orderly working of the arbitration process unless a compelling reason for invoking the court's equitable powers is presented. One of the principal purposes of arbitration is to reach a speedy final result and to avoid protracted litigation.

However, as pointed out in a comment in 6 U.C.L.A. Law Review (1959), 603, 628, "Often the substantial interests of the individual employee and the union diverge. At this point it is difficult for the union to adequately represent the individual's interest. This may occur when he is a non-union member of the collective-bargaining unit, or he belongs to a minority faction of the union, or he is the 'square peg in the round hole' type, or merely because the union officials do not believe in his claim." It is in such a situation that some courts have extended judicial protection to the employees whose interests are actually not being represented by the union in the arbitral process. We fully agree with the conclusion of the New York appellate division that, "The law upon this subject is still in a state of flux." *Donato v. American Locomotive Co.* (1954), 283 App. Div. 410, 415, 127 N. Y. Supp. (2d) 709, 714, affirmed, 306 N. Y. 966, 120 N. E. (2d) 227.

The New York courts by two recent decisions have made a notable contribution to the progress of the law in coping with this problem of protecting the rights of employees in labor arbitration proceedings whose interests are adverse to the union. *In the Matter of Iroquois Beverage Corp.* (1955), 14 Misc. (2d) 290, 159 N. Y. Supp. (2d) 256, and *Soto v. Lenscraft Optical Corp.* (1958), 7 App. Div. (2d) 1, 180 N. Y. Supp. (2d) 388.

In the *Iroquois Beverage Corp. Case, supra,* certain employees sought a court judgment to permit them to intervene in a labor arbitration proceeding over the objections of both the union and the employer. The arbitration had been initiated by the union over seniority rights, as was the

case in the instant appeal. In such arbitration the union was championing the cause of 32 employees whose interests were adverse to those employees who sought intervention. The court granted such right of intervention and quoted with approval the following dictum appearing in the opinion in *Donato v. American Locomotive Co., supra* (283 App. Div. 416, 127 N. Y. Supp. (2d) 715):

"Even if the interested employee has not intervened in the arbitration proceeding, it has been held that he has the right to intervene at a later stage, in the judicial proceeding, and to move to vacate the award on the ground that he is a person interested in 'the controversy which was arbitrated.' *Busch Jewelry Co. v. United Retail Employees' Union,* 170 Misc. 482, 10 N. Y. Supp. (2d) 519; cf., *Curtis v. New York World-Telegram Corp.* 282 App. Div. 183, 121 N. Y. Supp. (2d) 825, *supra; Estes v. Union Terminal Co.* (5th Cir.), 89 Fed. (2d) 768."

The case of *Soto v. Lenscraft Optical Corp., supra,* involved an appeal by the union from a lower court judgment vacating a labor arbitration award because certain employees had been denied the right to appear in such arbitration proceeding by their own counsel. The arbitration had been instituted by the union because the employer had threatened discharge of 122 employees alleged to have engaged in a slowdown. The plaintiff employees who had been denied intervention had made a showing that the union and the employer were in collusion to discriminate against the plaintiffs because of the efforts of another union to organize the plant. The court affirmed the judgment below vacating the award. It held that, while the union has control over the grievance procedures, there must be implied a duty of *fair representation.* In its opinion the court declared (7 App. Div. (2d) 6, 180 N. Y. Supp. (2d) 392):

"Whether petitioners be viewed in the nature of third-party beneficiaries of a contract or in the position of bene-

ficiaries of a trust, in which the union as a trustee owes them a fiduciary obligation of fair representation (the label is not important), they had cognizable standing to seek a vacatur of the award."

The test of fair representation employed by the court in the *Soto Case* is the one advocated by Prof. Cox in his article, "Rights Under a Labor Agreement" in 69 Harvard Law Review (1956), 601, 638:

"The relationship between law and industrial relations will be improved, and collective bargaining will work better, in my opinion, without any sacrifice of the interests of individual employees, if contracts which contemplate active administration through a grievance and arbitration procedure controlled by the union are held to vest the power to settle grievances in the collective-bargaining representative, *subject to its fiduciary duty of fair representation.*" (Emphasis supplied.)

We deem such test of fair representation, in determining when to grant court protection to the rights of an individual employee under the collective-bargaining contract, to be sound in principle and we adopt the same. In most situations whether the union is performing its fiduciary duty of fair representation in an arbitration proceeding presents a question of fact. However, where the interests of two groups of employees are diametrically opposed to each other and the union espouses the cause of one in the arbitration, it follows as a matter of law that there has been no fair representation of the other group. This is true even though, in choosing the cause of which group to espouse, the union acts completely objectively and with the best of motives. The old adage, that one cannot serve two masters, is particularly applicable to such a situation.

This court applied the test of fair representation in giving judicial relief to individual employees in *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 82 N. W. (2d) 172.

There the court entertained a suit by the employees to recover vacation pay due under a collective-bargaining contract without the union's having invoked the grievance procedure, the end step of which was arbitration. The rationale of such holding is stated in the opinion as follows (p. 500) :

"We do not construe the contract or the law as requiring an individual employee to invoke this grievance procedure to assert an accrued pecuniary claim in circumstances where it is reasonably apparent that the union is hostile to him and will not give him adequate representation. To do so would place the employee's accrued rights against his employer more or less at the mercy of an unfriendly union. Both congress and the Wisconsin legislature have shown solicitude to protect employees from such consequences, by the provisions of the 1947 Federal Labor Management Act, 61 U. S. Stats. at L., p. 143, sec. (9) (a), and the Wisconsin Employment Peace Act, sec. 111.05 (1), that any individual employee shall have the right at any time to present grievances to the employer. See discussion and authorities cited in Lenhoff, The Effect of Arbitration Clauses upon the Individual, 9 Arbitration Journal, 3, and *Elgin J. & E. R. Co. v. Burley,* 325 U. S. 711, 733, 736, 65 Sup. Ct. 1282, 89 L. Ed. 1886."

Under the holding in *Soto v. Lenscraft Optical Corp., supra,* if the plaintiff employees in the instant case had applied to the arbitrator to intervene in the arbitration proceeding, it would have been his duty to have granted it. Such right of intervention would be valueless, however, if the plaintiffs were not given adequate notice of the arbitration hearing. In view of our holding that there was no fair representation of the plaintiffs by the union at such hearing, to hold that they would be bound by the arbitrator's adverse award contravenes our concept of due process.

While the plaintiff employees had no seniority rights at common law, and such rights were created solely by reason of the labor contract negotiated in their behalf by

the union, nevertheless they constitute a valuable property right and cannot be divested without due process of law. *Estes v. Union Terminal Co.* (5th Cir. 1937), 89 Fed. (2d) 768, and *Primakow v. Railway Express Agency* (D. C. Wis. 1943), 56 Fed. Supp. 413.[2] It is the contention of the union that no due-process problem is present, in holding the award binding upon the plaintiffs' seniority rights, because the plaintiffs were represented by the union in the arbitration proceedings. The leading case on due process as applied to class representation is *Hansberry v. Lee* (1940), 311 U. S. 32, 61 Sup. Ct. 115, 85 L. Ed. 22, 132 A. L. R. 741, in which the opinion was written by Mr. Justice (later Chief Justice) STONE. The opinion expressed the conclusion that, where the substantial interests of the representative are not necessarily or even probably the same as those he purports to represent, due process militates vigorously against giving the decision effect upon them.[3] Here the interests of the union espoused in the arbitration were in direct opposition to those of the plaintiffs.

The union advances the further argument that plaintiffs' rights were adequately represented before the arbitrator because the employer's position in the arbitration proceedings was identical to that of the plaintiffs. While such contention

---

[2] The brief *amicus curiae* contends that there is no issue of due process under the Fourteenth amendment present because of the absence of any state action, citing *Ross v. Ebert* (1957), 275 Wis. 523, 82 N. W. (2d) 315. However, the case of *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 64 N. W. (2d) 866, clearly demonstrates that state action is present. This is because, as pointed out therein, the Employment Peace Act (secs. 111.01 to 111.19, Stats.) makes it an unfair labor practice not to carry out the arbitration clause of a collective-bargaining contract. At common law in Wisconsin such an arbitration clause was unenforceable. *Local 1111 v. Allen-Bradley Co.* (1951), 259 Wis. 609, 49 N. W. (2d) 720.

[3] See Lenhoff, Labor Arbitration and the Individual, 9 Arbitration Journal (1954), 3, 22.

might be material on the issue of due process, we deem it to be beside the point on the issue of whether the plaintiffs were entitled to notice of the hearing, and an opportunity to intervene, as a matter of sound labor policy. Employees not fairly represented by the union should never be put in the position of having to solely depend upon the employer's championing their rights under the collective-bargaining contract.

We find it unnecessary to ground our holding, that the award should be held not binding upon the plaintiffs because of lack of notice to them of the arbitration hearing, upon lack of due process. Courts of equity traditionally have the power to grant relief in situations which offend the court's sense of justice and fair play. We are herein confronted with a new situation in which it is incumbent upon us to adopt such rule of law as we deem to be in the best interests of sound public policy. We do not believe that the requiring of the giving of notice, and an opportunity to intervene, to those employees not being fairly represented in the arbitration by the union, as a condition to the award being binding on such employees, will prove disruptive of the arbitration process. We are inclined to believe that in the vast majority of labor arbitrations no question of fair representation will ever arise.

We have intentionally avoided discussion of whether the employees' right to fair representation is derived from a theory of agency, third-party beneficiary doctrines, or a trustee and cestui relationship. As well stated in 66 Yale Law Journal (1957), at page 951, "labor-management relations pose special problems that should be resolved with a view to the needs of contemporary labor policy. In short, whether employees are entitled to protection in union-management arbitrations, and whether participation, a stay, or an attack upon the award is the proper remedy should be viewed as questions of labor policy."

In view of our holding that the plaintiffs are not bound by the award because of not having been given proper notice of the arbitration hearing, we do not reach the question raised by the motion for review as to whether the arbitrator exceeded his jurisdiction.

*By the Court.*—The judgment is modified by striking paragraph (3) therefrom and, as so modified, is affirmed.

FAIRCHILD, J. (*dissenting*). A collective-bargaining agreement was in effect. It provided for arbitration of unresolved grievances. The parties resorted to arbitration in compliance with the agreement and an award was made. The parties violated no statute. This court now affirms an injunction forbidding enforcement of the award against the plaintiffs.

In my opinion, plaintiffs have shown no grounds for the exercise of the equity powers of a court.

Plaintiffs' complaint attacked the award solely upon the ground that the award exceeded the limits of interpretation of the agreement and therefore did not comply with the contract. Neither the trial court, nor this one, has dealt with that issue.

It appears that the grievance concerning the seniority of employees who had been employed both within and without the bargaining unit arose in September, 1957. The parties stipulated that on September 19th, the union committee called a meeting of the employees in the bargaining unit and that a majority voted to arbitrate the grievance. A number of plaintiffs were present. The hearing before the arbitrator was held October 30th, and the award was made March 10, 1958. The award was read to a subsequent union meeting in the bargaining unit. There is no claim that any plaintiff made any effort to intervene and present his arguments before the arbitrator, or that the company or union prevented or made it difficult for plaintiffs to attempt to

intervene. The position now taken by this court is that at some point in the arbitration, the union or the company had the duty of serving notice of hearing upon plaintiffs if they wished the award to be binding upon plaintiffs.

The present action was commenced June 29, 1958, after a dispute arose between the union and the company over the employer's compliance with the award, and after an unfair-labor-practice charge was filed against the employer by the union. As stated above, the complaint did not raise the issue of lack of notice.

There is no claim that the employer failed to make a vigorous presentation of all reasonable contentions favorable to plaintiffs, and the statement accompanying the arbitrator's award indicates that the employer presented full arguments and briefs in support of its position.

We have no right to impose upon labor arbitrations a new procedural requirement (which turns out to be jurisdictional, in effect) merely because we "deem [it] to be in the best interests of sound public policy." That is legislation.

Plaintiffs have not shown that advantage has been taken of them by unconscionable conduct.

The following opinion was filed January 5, 1960:

PER CURIAM (*on motion for rehearing*). The brief of the appellant union, in support of its motion for rehearing, contends that federal labor law controls the instant case and not state law, because of the fact that the employer is substantially engaged in interstate commerce. We find it unnecessary to pass on this contention because several of the authorities relied upon in our opinion are federal cases. The United States supreme court has not yet spoken on the principal point decided. When it does, we can perceive of no reason why the same policy considerations which

are discussed in our original opinion, and which caused us to reach the result we did, should not carry equal weight with that court.

The second point advanced by the union in support of its motion for rehearing is that our original decision interferes with the union's rights derived from the Labor Management Relations Act of 1947, as amended, to be the exclusive collective-bargaining agent for the plantiff employees in matters affecting their seniority rights. In support of such contention *Ford Motor Co. v. Huffman* (1953), 345 U. S. 330, 73 Sup. Ct. 681, 97 L. Ed. 1048, is cited. That case dealt with preferential seniority rights of employees, who had been in military service, arising under a collective-bargaining contract negotiated by the union as the collective-bargaining agent. The argument now advanced seems to be this: Because the union in the first instance could have negotiated a contract with the employer giving the plaintiff employees unfavorable seniority rights, the union can accomplish the same result in the arbitration proceeding.

We deem the foregoing to be a fallacious argument. Once the rights of employees have become fixed in the collective-bargaining contract, the union does not possess the right to barter them away before an arbitrator. The cases of *Estes v. Union Terminal Co.* (5th Cir. 1937), 89 Fed. (2d) 768, and *Primakow v. Railway Express Agency* (D. C. Wis. 1943), 56 Fed. Supp. 413, deal with rights arising under the National Railway Labor Act. Those cases hold that employees have vested seniority rights under their collective-bargaining contract, which entitle them to notice of, and the right to participate in, an arbitration proceeding instituted to pass on such rights. We do not deem that

seniority rights negotiated under the Labor Management Relations Act, and embodied in a collective-bargaining contract, should be accorded any lesser protection.

The motion for rehearing is denied without costs.