WIDUK, Appellant, v. JOHN OSTER MANUFACTURING COM-
PANY, Respondent.

*September 4—October 2, 1962.*

For the appellant there were briefs and oral argument by *George E. Kunde* of Milwaukee.

For the respondent there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *John G. Kamps, Laurence C. Hammond, Jr.,* and *Thomas A. Clemons* of counsel, all of Milwaukee, and oral argument by *Mr. Kamps* and *Mr. Thomas A. Clemons.*

HALLOWS, J.   It is without dispute the plaintiff was discharged on November 18, 1959, for failure to notify the defendant of her absence from work for the two preceding days. The union contract in Article VII, section 7 C, provided seniority would be considered terminated when an employee was absent for two or more consecutive working days without notice to the company unless a satisfactory explanation was accepted by the company.  On the morning of the 19th, the plaintiff conferred with the personnel director of the defendant, presenting a doctor's certificate that she had been under his care for severe migraine headaches. She stated she had called a cab on both the 17th and 18th to go to the doctor's office and could possibly have called a cab from the doctor's office to take her home.  She admitted she did not notify the company.  The personnel director was of the opinion the plaintiff did not make an honest effort to contact the company and to fulfil her contractual obligations and refused to accept the explanation of her failure to notify the company of her absence.  The refusal to accept the explanation is the basis of the claimed wrongful discharge and of the breach by the defendant of the collective-bargaining agreement.

Article VI of the agreement provides for four chronological steps to be taken in the procedure to settle disputes subject thereto. The first step sets forth a method of settlement between the management representative and the employee and the union steward. If the disposition of the matter is not satisfactory, the second step requires that within two regularly scheduled working days a request for a review is to be made to the superintendent and in such an event the matter is then considered a grievance, reduced to writing by the union and signed by the foreman, the employee, and the employee's steward. All grievances, with exceptions not here material, are required to be filed within fifteen working days after the occurrence of the grievance. The management representative then reviews the grievance with the representatives of the shop committee. The third step involves a request for review to the industrial-relations department and a consideration at a meeting of the company and the shop-committee representatives. The fourth step provides for arbitration.

On November 19th, the plaintiff called the union president who was then chairman of its executive board and told him of her discharge; he said he would investigate the matter. On the following day he advised the plaintiff he had talked to the company and the company would not reinstate her, but if she wanted to pursue the matter she could follow normal grievance procedures. The plaintiff testified, "I called him the next evening at his home and he told me that they had been through it and they were justified in what they did, and I asked him about taking the other steps, I understood that you were supposed to make a written application and be represented by your union, and he said I might just as well forget it; I had gone as far as I could; it was final." The plaintiff never asked for a review or requested the union to file a grievance in compliance with the second step of the grievance procedure. There was testimony

that a grievance procedure had to be initiated in this type of case by the employee.

The question is thus presented on this appeal, whether an employee may seek the aid of the court against an employer to require the reinstatement of employment and the restoration of seniority rights without first exhausting the grievance procedures provided in the collective-bargaining contract entered into between the employer and the union. In *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 82 N. W. (2d) 172, this court sustained an action brought by 17 discharged employees for a specific money claim which accrued to them under the terms of a collective-bargaining agreement as vacation pay on the ground an individual employee may maintain an action to specifically enforce provisions of a collective-bargaining contract which are for his individual benefit as contrasted with provisions which are for the benefit of the union. It was pointed out the action was not barred or subject to abatement because of the failure to exhaust or invoke the grievance procedures of the collective-bargaining contract because it was apparent the union was hostile to the plaintiffs and, in fact, had taken the position it would not process any grievance of these plaintiffs. The case expressly left open the question of whether the plaintiffs' action for specific performance would have been barred or subject to abatement by reason of failure to invoke grievance and arbitration procedures if the union had been willing to afford to the plaintiffs what might be called fair representation. The problem of court enforcement of rights derived from collective-bargaining agreements was again considered in *Clark v. Hein-Werner Corp.* (1959), 8 Wis. (2d) 264, 99 N. W. (2d) 132, 100 N. W. (2d) 317, where this court granted relief to a class of employees in a suit to set aside a labor arbitration award which deprived the plaintiffs of certain seniority rights. In the *Hein-Werner Case,* we adopted the doctrine of fair

representation and held as a matter of law a union, although acting completely objectively and with the best motives, espousing the cause of one group of members whose interests were diametrically opposed to another group of its members, did not give fair representation to the unrepresented group.

While the authorities are divided, the general rule is recognized that an employee claiming wrongful discharge under a collective-bargaining agreement between his employer and his union must show he has exhausted the grievance procedure provided by contract as a condition precedent to the bringing of an action against the employer for the discharge. See Anno. 72 A. L. R. (2d) 1439. Some of the cases involve actions for damages for breach of the bargaining agreement while others seek specific enforcement of rights created by the agreement, as in the instant case.

However, the rule is not absolute and includes exceptions or qualifications and an action for wrongful discharge may be maintained without exhaustion of the contractual remedies if recourse to such remedies would have been futile or circumstances would justify the employee's failure to invoke such remedies. *United Protective Workers v. Ford Motor Co.* (7th Cir. 1952), 194 Fed. (2d) 997; *United Protective Workers v. Ford Motor Co.* (7th Cir. 1955), 223 Fed. (2d) 49 (futility because of the company's position that dismissal under its pension-plan policy was not subject to grievance procedure). See also *United States Steel Corp. v. Nichols* (6th Cir. 1956), 229 Fed. (2d) 396, 56 A. L. R. (2d) 980. A clear showing of the futility of invoking the contractual procedure must be made and a mere allegation a conspiracy existed between the employer and the union was held insufficient in *Guszkowski v. U. S. Trucking Corp.* (D. C. N. J. 1958), 162 Fed. Supp. 847. An arbitrary refusal by a union to prosecute a grievance

constitutes futility and justifies the failure to exhaust collective-bargaining remedies. *Alabama Power Co. v. Haygood* (1957), 266 Ala. 194, 95 So. (2d) 98; *Jenkins v. Schluderberg, Etc., Co.* (1958), 217 Md. 556, 144 Atl. (2d) 88.

Two intermediate appellate cases have held that when the failure of the union to proceed under or exhaust the grievance procedure is based on a *bona fide* determination by the union that the employee's claim is not justified, the employee cannot maintain an action against the employer for damages for wrongful discharge. *Terrell v. Local Lodge 758, International Asso. of Machinists* (1956), 141 Cal. App. (2d) 17, 296 Pac. (2d) 100; *Garner v. KMTR Radio Corp.* (1956), 146 Cal. App. (2d) 441, 303 Pac. (2d) 825. These decisions may be justified on the ground that a collective-bargaining contract is an attempt to secure industrial peace with procedures for the adjustment of grievances, and the employee is not free to disregard them if the result is contrary to his liking. The employer has a right to be free from litigation when the grievance procedure provides a remedy and the union in good faith believes, either in the initial stage or in an intermediate stage of the contractual procedure, that the employee's claim is without merit.

Another exception to the requirement of the exhaustion of contractual remedies is based on estoppel or waiver and is found in cases involving employer's action which was responsible for the failure to use the grievance procedure or prevent its use. *Stroman v. Atchison, T. & S. F. R. Co.* (1958), 161 Cal. App. (2d) 151, 326 Pac. (2d) 155; *Moore County Carbon Co. v. Whitten* (Tex. Civ. App. 1940), 140 S. W. (2d) 880.

There is also authority for the rule that when an employee accepts the discharge as final and does not seek reinstatement, he may sue his employer for damages with-

out exhausting the contractual remedies. This result is reached on the ground that while grievance procedure under the collective-bargaining agreement is appropriate and should have been used if a discharged employee seeks reinstatement in a civil action, such procedure is not applicable to the enforcement of a common-law right for damages for a breach of contract. However, the instant action was not for damages but for reinstatement with seniority and back pay.

We have rejected this rule in a somewhat-analogous situation, and applied the doctrine of exhaustion of contractual remedies within the union to an action for damages brought against the union on the ground of wrongful expulsion from membership and held the complaint was defective upon demurrer for failure to plead the exhaustion of the remedies within the union or facts constituting an exception to the rule. *Kopke v. Ranney* (1962), 16 Wis. (2d) 369, 114 N. W. (2d) 485. A similar rule should apply to cases brought by the employee against his employer seeking reinstatement of employment or specific performance of a collective-bargaining agreement when the agreement provides a means of securing such relief.

In this case, the failure to file a grievance was raised in the answer and a trial had. In submitting this issue to the jury, the trial court framed it in language of due diligence, namely, whether the plaintiff had exercised due diligence in attempting to become reinstated in her employment. We do not recommend the issue being framed in such form but the question was not objected to by the respondent and both parties and the court considered the issue was submitted to the jury by the inquiry. The jury then was to determine by the verdict whether or not the circumstances justified the failure of the plaintiff to pursue her contractual remedies before commencing her action against the employer for reinstatement.

On motions after verdict, the court sustained the jury's answer to this question in favor of the plaintiff. The determination of this appeal thus depends on whether there is any credible evidence to sustain this verdict. We have examined the record and, considering the testimony most favorable to the plaintiff, including all the inferences which may reasonably be drawn therefrom, have come to the conclusion there is no credible evidence to sustain the answer. The most the evidence proved was the union president expressed his opinion that the plaintiff did not have a case, the company was firm in its position, and the plaintiff did not initiate step two of the grievance procedure because she believed what the union president told her of her chances of success. We consider the statement to the plaintiff, "he said I might just as well forget it; I had gone as far as I could, it was final," does not raise a reasonable inference that the union was refusing to represent her or that the grievance procedure was not open to her if she so desired it or that the union would not afford her fair representation in the processing of a grievance or that resort to the grievance procedure would be futile. Since the union had no duty to initiate the grievance and she was aware it was her duty under the contract to initiate the second step of the grievance procedure, we find no justification for the plaintiff's failure to pursue the contractual remedies.

The trial court should have changed the jury's answer to the question from "Yes" to "No" and dismissed the complaint. This does not require a reversal because the complaint was dismissed on another ground. We do not reach that question and express no opinion of the correctness of the trial court's interpretation of the seniority provision of the contract.

The respondent requests double costs because of an alleged infraction of the rules of this court regarding the completeness of the appendix. The facts do not justify in-

voking the rule set forth in *Nothem v. Berenschot* (1958), 3 Wis. (2d) 585, 89 N. W. (2d) 289, and the request is denied.

*By the Court.*—Judgment affirmed.