James BELK, Plaintiff-Appellant,

v.

ALLIED AVIATION SERVICE COMPA-
NY OF NEW JERSEY, INC.,
Defendant-Appellee.

No. 144, Docket 27673.

United States Court of Appeals
Second Circuit.

Argued Nov. 29, 1962.

Decided March 25, 1963.

William McKelvey, New York City, for
plaintiff-appellant.

Emanuel Dannett, of McGoldrick, Dan-
nett, Horowitz & Golub, New York City
(Herbert D. Schwartzman, of McGold-
rick, Dannett, Horowitz & Golub, New
York City, on the brief), for defendant-
appellee.

Before CLARK, MOORE, and KAUF-
MAN, Circuit Judges.

LEONARD P. MOORE, Circuit
Judge.

Plaintiff James Belk, a resident of New
York, was employed by Allied Aviation
Service Company of New Jersey, Inc.
(Allied) as a Sky Cap Porter at the
Municipal Airport, Newark, New Jersey.
He is a member of Local 297 of the Unit-
ed Transport Service Employees (the
Union), the recognized bargaining agent
for plaintiff, and is subject to a collective
bargaining contract between Allied and
the Union. While working on September
29, 1961, Belk received a letter termi-
nating his services without giving him
notice of a hearing as required in such
cases under the terms of the contract.

Without any effort to obtain redress
for his discharge through his Union,
Belk brought suit directly against Allied
in the Southern District of New York
for damages as a result of the alleged
breach. Jurisdiction was founded on
diversity of citizenship. The Court be-
low granted defendant's motion to dis-
miss and Belk appeals.

■ The contractual provisions for the settlement of disputes are contained in Article 20 of the collective agreement.[1] In summary that article provides that no employee who has been in service for ninety days will be dismissed without a fair and impartial hearing before the employer. The initial stages of this grievance procedure are prosecuted by the employee himself, although he is entitled to the presence of his Union representative if he so desires. The contract further states that if the Union feels that the Company's ultimate determination is unfair, the Company and Union shall endeavor to settle the issue, and failing this either may demand arbitration.

Appellant argues that the failure of the Company to offer him a hearing was a breach of the agreement entitling him to damages in a suit on the contract. He further contends that since the Union does not enter the procedure until the Company has made a determination of his status after a hearing and, since the Union can request arbitration only if it feels that the decision is unfair, recourse to arbitration through the Union before suit is not only unnecessary but is foreclosed under the contract since no such determination after a hearing has been made.

The broad coverage and intent of the contract to seek "amicable adjustment" instead of court litigation is apparent from the opening clause of the Article 21: "No Strike—No Lockout", reading, "As this agreement provides for the amicable adjustment of any and all disputes and grievances, * * *." Assuming that failure to give notice made the specific provisions of Article 20(d) unavailable, Article 20(e) provides that:

1. Article 20 of the collective agreement reads as follows:

"*Article 20.—Discipline and Investigation.*

"a. No employee who has been in service for ninety (90) days will be disciplined or dismissed without a fair and impartial hearing. However, an employee may be suspended immediately pending such investigation. The accused employee will be advised in writing of the precise charge against him within five (5) days, exclusive of holidays, after the date of the occurrence, and a hearing will be held within five (5) days from the date of the written notice. At the hearing the employee may be present and have representatives of his own choosing. He will be permitted to hear all evidence against him and question all witnesses and/or statements submitted against him. A decision will be rendered in writing within five (5) days after the hearing is completed. Reasonable opportunity will be allowed employees to secure the presence of their representatives, and it shall be the obligation of management to summon all witnesses whom the employee feels can present facts which will lend weight to his testimony.

"b. A written transcript may be made of all hearings at the discretion of the employee and the management at their own respective costs.

"c. If the decision is in favor of the employee, his record will be cleared of the charge and if held from the service, he will be reinstated and compensated for the wage loss, if any, suffered by him. Such compensation will be the amount he would have earned from the Company, less compensation received in other employment.

"d. If the Union feels that the decision is unfair, the parties agree that they shall endeavor in good faith to settle the issue. Failing such settlement, either party may demand arbitration by an arbitrator designated by the Federal Mediation and Conciliation Service; the other party must agree thereto, and the decision and award of said arbitrator shall be final and binding upon the parties. The cost of any arbitration, if any, shall be borne equally by the parties hereto.

"e. When a dispute or claim involving the application, construction, interpretation or performance of the rules of this agreement occurs, the parties agree that they shall endeavor in good faith, first to adjust and settle such disputes between themselves after a fair hearing. Failing such adjustment or settlement between themselves, either party may demand arbitration by an arbitrator designated by the Federal Mediation and Conciliation Service; the other party must agree thereto, and the decision and award of said arbitrator shall be final and binding upon the parties. The cost of any arbitration, if any, shall be borne equally by the parties hereto."

"When a dispute or claim involving the application, construction, interpretation or performance of the rules of this agreement occurs, the parties agree that they shall endeavor in good faith, first to adjust and settle such disputes between themselves after a fair hearing. Failing such adjustment or settlement between themselves, either party may demand arbitration by an arbitrator designated by the Federal Mediation and Conciliation Service; the other party must agree thereto, and the decision and award of said arbitrator shall be final and binding upon the parties. The cost of any arbitration, if any, shall be borne equally by the parties hereto."

Although the preliminary procedures prescribed in this contract for the prosecution of cases of wrongful discharge may be somewhat unusual, a dispute over the Company's breach of the notice and hearing provisions constitutes a dispute involving "performance of the rules of this agreement." Any collective agreement is intended to secure rights for individual employees; notice and a hearing after discharge are merely examples of such rights. They are no different from provisions with respect to seniority, vacations or overtime pay. Under the broad arbitration clause set out above, controversies concerning these matters were clearly intended to be submitted to arbitration as agreed upon in the contract. So too the breach of contract alleged in this case.

That a matter of procedure rather than one of substance is involved is of no significance. In fact, we recently held that the question of compliance with the procedural prerequisites to arbitration set forth in the collective agreement is to be decided by the arbitrator and not the court. Livingston v. John Wiley & Sons, Inc., 313 F.2d 52 (Jan. 11, 1963). What effect is to be given this breach by the employer, whether the arbitrator would require that the employer give Belk a hearing or whether he would find jurisdiction to deal with this discharge on the merits are all questions that the contract contemplates will be submitted to the arbitrator.

This being the case, the remaining question is the effect of the arbitration · clause on the individual's right to sue for breach of contract. Since this is a diversity case, there is no question of this court's jurisdiction to entertain this action. Even were this not so, the Supreme Court in Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), held that suits by individuals are cognizable in the federal courts under Section 301. In addition, that Court held that all such suits are to be governed by federal law. However, the opinion in that case indicates in no uncertain terms that the Court was not striking down arbitration in favor of suits by individual employees in the courts because the Court specifically said, "There was no grievance arbitration procedure in this contract which had to be exhausted before recourse could be had to the courts." 371 U.S. 196, n. 1, 83 S.Ct. 271, and invited comparison with its recent decisions in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, and Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed. 2d 474.[2] Conversely, if, as here, there is grievance arbitration procedure provided for, there should be recourse to it before the individual employee is permitted to bring a court action.

2. The Court also made clear that it was only deciding a jurisdictional question and not resolving the issue of the substantive rights of individuals subject to Union contracts. The Court stated that:

"The only part of the collective bargaining contract set out in this record is the no-discrimination clause. Respondent does not argue here and we need not consider the question of federal law of whether petitioner, under this contract, has standing to sue for breach of the no-discrimination clause nor do we deal with the standing of other employees to sue upon other clauses in other contracts." 371 U.S. 195, 201, n. 9, 83 S.Ct. 267, 270.

The Supreme Court by virtue of Evening News has now committed the federal courts to fashioning a body of law encompassing the rights of all parties concerned in the bargaining process. State courts, the lower federal courts at least in diversity cases, and numerous commentators have heretofore struggled to construct an adequate legal theory to deal with the relationship between employee, union, employer and the collective bargaining contract. See Cox, The Legal Nature of Collective Bargaining Agreements, 57 Mich.L.Rev. 1 (1958). They have flirted with the theory of a third party beneficiary contract, with a finding of an agency relationship between union and employee, and with application of the principles of the law of trusts. See discussion of these theories in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 210 F.2d 623, 625–627 (3d Cir., 1954), aff'd 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955). Strict use of any one of these analogies leads to insurmountable difficulties, arising primarily from the fact that collective bargaining agreements are to a large degree *sui generis*. That is not to say that resort to established principles of law in these areas cannot at times be useful, but only that these agreements do not fit snugly into any one category. For example, a collective agreement is made for the benefit of the employees (at least in part), but a third party beneficiary is not bound by the contract under usual third party beneficiary rules. Certainly such a rule in the labor field might well lead to chaos and would be totally inconsistent with the purpose of such agreements.

■ We need not at this juncture try to resolve all these problems even assuming (which we do not) that such a herculean effort were possible because the case before us does not require it. We decide only that where the collective agreement provides for arbitration by the Union of the subject matter of the employee's suit, the employee must look to his union initially for the vindication of his rights.[3] If every employee is to be free to institute suits directly against his employer for every incident which he claims to be a violation of some right under the collective bargaining agreement, little benefit is to be gained by any of the parties either from union representation or arbitration clauses. Where his remedy lies when his union refuses to prosecute his claim we leave to future cases as they arise.[4]

3. See, e. g., Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953) (applying Missouri law) ; Ostrofsky v. United Steelworkers, 171 F.Supp. 782 (D.Md.1959), aff'd 273 F.2d 614 (4th Cir.), cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960) ; Guszkowski v. United States Trucking Corp., 162 F.Supp. 847 (D.C.N.J.1958) ; United States v. Voges, 124 F.Supp. 543 (E.D.N.Y.1954) ; Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959) ; Mellow v. Local 4408, 82 R.I. 60, 105 A.2d 806 (1954). See generally Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601, 645–655 (1956). A minority of courts have held to the contrary. See Woodward Iron Co. v. Ware, 261 F.2d 138 (5th Cir., 1958) ; In re Norwalk Tire & Rubber Co., 100 F.Supp. 706 (D.C.Conn.1951) ; Alabama Power Co. v. Haygood, 266 Ala. 194, 95 So.2d 98 (1957).

4. The Supreme Court has indicated that the authority of the bargaining representative is not absolute and that there is a duty to fairly represent all members. E. g., Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) ; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944). See, also, Clark v. Hein-Warner Corp., 8 Wis.2d 264, 268, 99 N.W.2d 132, 100 N.W.2d 317 (1959). However, the Union is allowed a certain measure of discretion in bargaining, Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681. 97 L.Ed. 1048 (1953). and in determining whether to prosecute grievances, Union News Co. v. Hildreth, 295 F.2d 658 (6th Cir., 1961) ; Cortez v. Ford Motor Co., 349 Mich. 108, 84 N.W.2d 523 (1957). Some courts are of the view that the employee can sue the employer where the Union has acted in an arbitrary or discriminatory manner, see Ostrofsky v. United Steelworkers, supra, n. 3, Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88 (1958) ; cf. Pattenge v. Wagner Iron

This result is in complete harmony with Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, supra. There the Company action for breach of a no-strike provision was dismissed, the Court holding that arbitration of this alleged breach was a prerequisite to suit. The Court rejected the argument that breach of a no-strike clause, often viewed as the *quid pro quo* for the arbitration provision (see Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)), was a sufficient ground for avoiding the Company's duty to arbitrate. Atkinson v. Sinclair Refining Co., supra, does not apply here. The Supreme Court there merely held that since the arbitration clause in question only allowed the Union and not the employer to request arbitration, the Company had on duty to resort to arbitration before bringing suit for breach.

The entire import of the Supreme Court cases beginning with Lincoln Mills, through the trilogy of the Steelworker cases to Drake at their last term is that arbitration, when agreed upon by the parties, is the best method for reconciliation of disputes arising out of collective agreements. Where an arbitration clause admits of a construction including the dispute in question within its ambit, recourse to the courts before any effort is made to process the dispute through arbitration is to be looked upon with disfavor. As we said recently:

> "The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling the resolution of intra-plant disputes. Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by processing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union." Black-Clawson Co. v. International Association of Machinists, 313 F.2d 179 (2d Cir., Dec. 22, 1962)."

Affirmed.

CLARK, Circuit Judge (concurring in the result).

Of course noncompliances with procedural provisions of the arbitration clauses in collective bargaining agreements should be subjects of arbitration. See Livingston v. John Wiley & Sons, 2 Cir., 313 F.2d 52; Carey v. General Electric Co., 2 Cir., 315 F.2d 499; Note, Procedural Requirements of a Grievance Arbitration Clause: Another Question of Arbitrability, 70 Yale L.J. 611 (1961). The problem for me is that Black-Clawson Co. v. International Asso. of Machinists Lodge 355, Dist. 137, 2 Cir., 313 F.2d 179, closed to individual employees the sort of provision (see Article 20.e of the collective bargaining agreement, quoted in note 1 of the majority opinion) which my brothers now hold up to this employee as their reason for refusing to entertain his case. I would have preferred that the individual employee should not be left solely to the mercies of his employer and his union. See Summers, Individual Rights in Collective Agreements and Arbitration, 37 N.Y.U.L.Rev. 362 (1962). For we have seen in recent years that, in some cases, a sweet harmony develops between the two that proves a bitter lockout of the solitary employee who finds his contractual rights going unprotected. Here Belk was dismissed in flagrant violation of Article

Works, 275 Wis. 495, 82 N.W.2d 172 (1957). Others say the sole remedy is against the Union. See Parker v. Borock, supra, note 3; Donato v. American Locomotive Co., 283 App.Div. 410, 127 N.Y.S.

2d 709 (3rd Dept.), aff'd 306 N.Y. 966, 120 N.E.2d 227 (1954). Compare Cox, supra, note 3, with Summers, Individual Rights in Collective Agreements and Arbitration, 37 N.Y.U.L.Rev. 362 (1962).

**518**

20 of the collective bargaining agreement, and it remains doubtful to say the least whether he will ever have redress of this wrong in the event of his eventual reinstatement or even more if he is not reinstated.

But the law of the circuit has apparently been determined to the contrary, and so I shall join in my brothers' disposition of this case, adding only the hope that Belk's union may yet act to rectify his wrong.