Henry **SIMMONS**

v.

**STATES MARINE LINES, INC.**

**No. 167 of 1964.**

United States District Court
E. D. Pennsylvania.
April 28, 1967.

Harry Lore, Philadelphia, Pa., for plaintiff.

Timothy J. Mahoney, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, J.

## MEMORANDUM OPINION

This action is one in admiralty by the libellant for damages based on an allegedly wrongful discharge and, failure, by the respondent, to permit him to reship.

## FACTS

The libellant, Henry Simmons, signed articles on September 27, 1962, for service aboard the S.S. "Pelican State". It appears that on October 20, 1962, while the vessel was docked at Brooklyn, New York, the libellant came aboard ship in an alleged intoxicated condition. The libellant was then informed by the captain that he would be discharged at the conclusion of the voyage for "failure to properly perform his duties due to intoxication." On October 22, 1962, the vessel shifted to New Jersey and paid off that afternoon. On October 24, 1962, an agent of the National Maritime Union wrote to the respondent requesting libellant's re-ship letter for the "Pelican State". The Union was informed that the libellant was not "eligible" to reship.

Libellant then filed this action. The respondent contends (a) that libellant was legally discharged and (b) even if there is some question about the validity of the discharge, the libellant has failed to exhaust the contract grievance procedure culminating in arbitration.

On January 17, 1966, this Court denied respondent's motion to dismiss, and stayed all other matters to give the parties an opportunity to seek arbitration. The order of the Court noted that:

> * * * If the parties are denied the right to arbitrate the matter, after having diligently sought the same, appropriate affidavits should be filed with the Court verifying the specific efforts which have been made subsequent to this order.

On January 26, 1966, the attorney for the respondent replied to the directive of this Court saying that arbitration had been requested but that the National Maritime Union had replied that the records of libellant's employment had been destroyed and, consequently, the dispute could not proceed to arbitration. Subsequently, after a conference between the parties, the respondent notified the Court that although it was not specifically waiving its rights to arbitration, it was of the opinion that that aspect of the proceedings should be invoked, if at all, by the National Maritime Union. The Union maintains its position that it is unable to take this dispute to arbitration because the relevant employment records have been lost. It is in this posture that the case now rests.

## DISCUSSION

Under the contract between the Union and the respondent there are provisions for continuing employment and elaborate grievance procedures. It is on those provisions that the libellant's rights must rest. The respondent argues that the "continuous employment" provisions in its contract with the Union, applied only if certain prerequisites are met. The relevant clause reads as follows:

> Unlicensed Personnel may remain continuously employed on the vessels operated by the Company, provided they meet the Company's hiring preferences in Group I as set forth subparagraphs (B) (1) of this section; and, provided further, that the Company and the employees desire such employment to continue.

The respondent argues that on the basis of this clause it was within its power to discharge the libellant at the end of

the voyage. The libellant counters with the argument that, despite this clause, the respondent's reason for discharging him was legally insufficient. It is unnecessary at this juncture to pass on the correctness of the respondent's position, in light of the grievance procedures, embodied in the contract for the resolution of disputes. Clearly, if the dispute was between the Union and the respondent, there would be clear reasons for decreeing arbitration in these proceedings. However, additional problems are raised because the Union is reluctant to press the libellant's claim. Normally, when disputes are taken to arbitration, the union involved actively represents those employees for whom it is the bargaining agent. It is for this reason that most contracts speak of disputes between the employer and the bargaining agent and provide for arbitration involving those parties. In this case it must be decided what measures are open to an employee when his union does not desire to process his grievance. It should be noted that the fact that a union fails to process a claim does not, by any means, indicate bad faith. Nevertheless, unless prohibited by the contract, some remedy should be available to the "aggrieved" employee. It is my decision that the libellant is entitled to have his case heard in this forum.

In the last few years the United States Supreme Court has evolved a strong policy favoring arbitration in cases of this type. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The respondent cites to me, as an example of this policy, the following passage from Belk v. Allied Aviation Service Co. of New Jersey, Inc., 315 F.2d 513 (2 Cir. 1963) where the Court observed that:

The entire import of the Supreme Court cases beginning with Lincoln Mills, through the trilogy of the Steelworker cases to Drake at their last term is that arbitration, when agreed upon by the parties, is the best method for reconciliation of disputes arising out of collective agreements. Where an arbitration clause admits of a construction including the dispute in question within its ambit, recourse to the courts before any effort is made to process the dispute through arbitration is to be looked upon with disfavor. (315 F.2d at p. 517).

Paralleling the federal policy favoring arbitration of disputes is the line of cases beginning with Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, which hold that an employee can have his claim resolved by the Courts if he accepts his discharge as final. Subsequent cases have tarnished this doctrine. See: Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) and Walker v. Southern Railway Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966). Those cases suggest that even where the employee accepts his discharge as final he must look to his arbitration remedies, in the first instance. In *Maddox,* supra, there was language which points the way to the disposition which shall be made in the instant case:

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as a mode of redress. *If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available.* See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; National Labor Relations Board v. Miranda Fuel Co., 2 Cir., 326 F.2d 172. But unless the contract provides otherwise, *there can be no doubt that the employee must afford the union the opportunity to act on his behalf.* Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. (Emphasis added. 379 U.S. at 652–653, 85 S.Ct. at 616.)

In the instant case the libellant has already requested his authorized bargaining agent to represent him—without success. Thus, one of the criteria set forth in *Maddox* for bypassing arbitration has been met. More important, the language quoted above recognizes that other remedies are in order where, as here, the union refuses to press a claim—even if it does so in good faith.

It is adjudged that this Court is a proper forum to hear libellant's claim and it is so ordered.